[944 NE2d 634, 919 NYS2d 99]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TONY WEAVER, Appellant.

Argued January 4, 2011; decided February 10, 2011

## POINTS OF COUNSEL

*William G. Pixley*, Rochester, and *Ronald C. Valentine, Public Defender*, Lyons, for appellant. I. Until a dispute reaches the point where it has potential or immediate public ramifications, it is not punishable as disorderly conduct. Whether a dispute has reached that defining moment depends upon the nature and number of people attracted by the commotion. Missing is evidence that Mr. Weaver's dispute attracted any public attention. Thus, there is legally insufficient evidence supporting the verdict convicting him of disorderly conduct. (*People v Munafo*, 50 NY2d 326; *People v Chesnick*, 302 NY 58; *People v Canner*, 88 Misc 2d 85, 40 NY2d 886; *People v Todaro*, 26 NY2d 325; *People v Perry*, 265 NY 362; *People v Pritchard*, 27 NY2d 246; *People v Tichenor*, 89 NY2d 769, 522 US 918; *People v Szepansky*, 25 Misc 2d 239; *People v Monnier*, 280 NY 77; *People v Galpern*, 259 NY 279.) II. A jury charge fails in its purpose if it is misleading. The charge in this case on disorderly conduct was misleading to the extent it did not include requested language reflecting the holding of *People v Munafo* (50 NY2d 326 [1980]). A jury, upon hearing the entire charge, would not gather from its language that the required risk is measured not by the place of the disturbance but by the nature and number of the people attracted to the commotion. (*People v Samuels*, 99 NY2d 20; *People v Ladd*, 89 NY2d 893; *People v Mike*, 92 NY2d 996; *People v Odell*, 230 NY 481; *People v Owens*, 69 NY2d 585.) III. Absent proof of probable cause to arrest, a conviction for resisting arrest cannot stand. There is legally insufficient proof of probable cause to arrest Mr. Weaver for disorderly conduct. Thus, that count charging him with resisting arrest should be dismissed. (*People v Jensen*, 86 NY2d 248; *People v Maldonado*, 86 NY2d 631; *People v Carrasquillo*, 54 NY2d 248; *People v Robinson*, 97 NY2d 341; *People v Cooper*, 38 AD3d 678; *People v Peters*, 136 AD2d 750, 72 NY2d 864; *People v Mehdi*, 29 NY2d 824; *People v Welch*, 289 AD2d 936, 98 NY2d 641; *People v Ormsby*, 30 AD3d 757; *People v Early*, 85 AD2d 752.)

*Richard M. Healy, District Attorney*, Lyons (*Wendy Evans Lehmann* of counsel), for respondent. I. The evidence at trial was sufficient for a rational trier of fact to have found beyond a reasonable doubt that defendant used abusive language and engaged in violent, tumultuous or threatening behavior in a public place and recklessly created a risk of causing public inconvenience, annoyance or alarm. (*People v Munafo*, 50 NY2d 326; *People v Diaz*, 22 Misc 3d 624; *People v Todaro*, 26 NY2d 325; *People v Galpern*, 259 NY 279; *People v Most*, 171 NY 423; *People v Carter*, 163 Misc 2d 643; *People v Contes*, 60 NY2d 620; *Jackson v Virginia*, 443 US 307; *People v Gaimari*, 176 NY 84; *People v Bleakley*, 69 NY2d 490.) II. Defendant's claim concerning the legal sufficiency of the jury instruction on disorderly conduct is only partially preserved. In any event, both the charges concerning disorderly conduct were sufficient to convey the correct rules to be applied. Defendant was not entitled to the precise phraseology he wanted, and the charges as given were correct and sufficient. (*People v Gray*, 86 NY2d 10; *People v Munafo*, 50 NY2d 326; *People v Samuels*, 99 NY2d 20; *People v Most*, 171 NY 423; *People v Diaz*, 22 Misc 3d 624; *People v Ladd*, 89 NY2d 893; *People v Russell*, 266 NY 147.) III. There was legally sufficient proof at trial that the arresting officer had reasonable cause to believe an offense had been or was being committed in her presence. Other proof being uncontrovertedly sufficient, the evidence supporting the verdict of guilty of resisting arrest was legally sufficient. (*People v Early*, 85 AD2d 752; *People v Todaro*, 26 NY2d 325; *People v Galpern*, 259 NY 279; *Brinegar v United States*, 338 US 160; *People v McDermott*, 279 AD2d 361, 96 NY2d 803; *People v Laltoo*, 22 AD3d 230; *People v Putt*, 303 AD2d 992; *People v Thomas*, 239 AD2d 246, 90 NY2d 911; *People v Martin*, 222 AD2d 528, 88 NY2d 850; *People v Mayi*, 198 AD2d 444.)

## OPINION OF THE COURT

GRAFFEO, J.

The issue raised by this appeal is whether defendant's convictions for disorderly conduct are supported by legally sufficient evidence. We conclude that they are and therefore affirm the order of the Appellate Division.

At around 1:25 A.M. on May 25, 2008, Sergeant House, while on routine patrol in the Village of Newark, came upon defendant Tony Weaver yelling and waving his arms at a woman in a parking lot outside of a hotel. Both were dressed in wedding attire. When the officer stopped her vehicle, defendant walked

across the street and entered a mini-mart gas station. The woman, who was sitting on the curb and in tears, explained to House that defendant and she had been married that day and had been fighting. The woman declined House's offer of help and assured the officer that she would stay the night at the hotel.

As House began to drive out of the lot, she observed defendant leave the mini-mart. When his wife approached him, defendant again became agitated and began yelling at her. He shouted at his wife to "get the f— away from me," among a stream of other obscenities. After observing this encounter, House pulled her vehicle near defendant and suggested that he calm down and that the couple needed to take their dispute somewhere else. Defendant responded by telling the officer to "shut the f— up" because she "wasn't his mother" and could not tell him what to do. House described defendant's tone as "[v]ery loud" and his demeanor as "very aggressive" and "very threatening." She also believed that he was intoxicated.

Sensing that the situation was escalating and that defendant was creating a disturbance, House radioed for backup. She then exited her vehicle and warned defendant that he needed to stop yelling and swearing or he would be arrested for disorderly conduct. Defendant again loudly used profanity and declared that "if you put your hands on me, bitch, you will be taking me to jail." At around this time, Sergeant Thomson arrived in response to House's radio call. House gave defendant a third warning to settle down. He refused to comply, instead continuing to hurl obscenities at his wife and House, causing House to conclude that defendant was not going to quiet down. House then advised defendant that he was under arrest for disorderly conduct. When House directed defendant to get into the back seat of the police vehicle, he refused and a struggle ensued, during which defendant punched Thomson in the face and injured House's arm. The officers eventually arrested defendant after Thomson used a taser to subdue him.

At the time of the incident, the hotel and mini-mart were both open for business. Two employees were inside the mini-mart and at least one customer was using a gas pump during the commotion. In addition, two vehicles accessed a nearby ATM while the disturbance progressed.

Following his arrest, defendant was indicted for assault in the second degree (Penal Law § 120.05 [3]), resisting arrest (Penal

Law § 205.30) and two counts of disorderly conduct (Penal Law § 240.20 [1], [3]). A jury acquitted defendant of second-degree assault but convicted him of resisting arrest and both counts of disorderly conduct. Defendant was sentenced to one year for resisting arrest and 15 days for each of the disorderly conduct convictions, all to be served concurrently. The Appellate Division affirmed (68 AD3d 1781 [4th Dept 2009]), and a Judge of this Court granted defendant leave to appeal (14 NY3d 807 [2010]).

Defendant argues that the evidence was legally insufficient to sustain the disorderly conduct convictions. He maintains that his behavior did not have the requisite potential or actual ramifications related to a public disturbance because there was no proof that the altercation with his wife and the police officers attracted attention from or annoyed any bystanders. The People respond that the evidence, viewed in the light most favorable to the prosecution, was legally sufficient to establish defendant's guilt beyond a reasonable doubt.

As relevant here, a person is guilty of disorderly conduct when

> "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
>
> "1. He engages in fighting or in violent, tumultuous or threatening behavior; or . . .
>
> "3. In a public place, he uses abusive or obscene language, or makes an obscene gesture" (Penal Law § 240.20 [1], [3]).

Defendant acknowledges that there was ample proof that he committed the conduct described in subdivisions (1) and (3), but claims that he did not recklessly create a risk of public inconvenience, annoyance or alarm because the confrontation was not public; instead it was merely a private encounter.

It is well established that "the disruptive behavior proscribed by our disorderly conduct statute be of public rather than individual dimension" (*People v Munafo*, 50 NY2d 326, 331 [1980]). As we have explained:

> "[D]isorderly conduct is a statutory creation. Intended to include in the main various forms of misconduct which at common law would often be prosecuted as public nuisances . . . a common thread that ran through almost all of this legislation was a desire to deter breaches of the peace or,

more specifically, of the community's safety, health or morals. . . . And, although it has always been difficult to essay any precise definition of breach of the peace . . . , this court has equated that term with public inconvenience, annoyance or alarm, the governing phrase of our current disorderly conduct statute" (*People v Tichenor*, 89 NY2d 769, 773-774 [1997] [internal quotation marks, citation and emphasis omitted], *cert denied* 522 US 918 [1997]).

Consequently, a person may be guilty of disorderly conduct only when the situation extends beyond the exchange between the individual disputants to a point where it becomes "a potential or immediate public problem" (*Munafo*, 50 NY2d at 331). In assessing whether an act carries public ramifications, relevant factors to consider are the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances (*see id.*; *People v Pritchard*, 27 NY2d 246, 248-249 [1970]).

And, contrary to defendant's position, there is no per se requirement that members of the public must be involved or react to the incident. Rather, the attention generated by a defendant's activities, or the lack thereof, is a relevant factor to be considered in the public dimension calculus. We have made clear that a defendant may be guilty of disorderly conduct regardless of whether the action results in public inconvenience, annoyance or alarm if the conduct recklessly creates a risk of such public disruption (*see People v Todaro*, 26 NY2d 325, 329 [1970] [stating that the defendant's "emphasis on the contention that the fact of disorder was not established, to the exclusion of the risk that it might come to pass, ignores the very terms of the statute itself" (emphasis omitted)]; *People v Kennedy*, 19 NY2d 761, 762 [1967] ["It is enough that disorder was threatened by defendant's conduct"]).

Here, the commotion occurred during the early morning hours when peace and quiet would be expected in this small village. The incident began in a public parking lot adjacent to a hotel and extended into a public street near the hotel and mini-mart, both of which were open for business. Although there was no testimony at trial from onlookers, there was evidence that a number of people were in the immediate vicinity, whether pumping gas, using the ATM or working at the mini-mart. It can also

reasonably be inferred that guests were sleeping in the nearby hotel.

Moreover, over a short time period, defendant's conduct escalated into a very vocal and aggressive confrontation. House warned defendant on three separate occasions to cease his conduct and leave the area. Rather than heed these warnings, defendant became increasingly agitated and belligerent, repeatedly shouting obscenities at his wife and the officer. After the final warning, House determined that defendant was not going to cease creating a disturbance and effectuated his arrest with the help of Thomson. On these facts, we believe that the jury had sufficient evidence to "weigh the whole incident" (*Tichenor*, 89 NY2d at 776) and logically conclude beyond a reasonable doubt that defendant recklessly created a risk of public inconvenience, annoyance or alarm within the meaning of the statute. In other words, based on the events leading up to defendant's arrest, there is a valid line of reasoning and permissible inferences from which a jury could have found that his conduct reached the point of "a potential or immediate public problem" (*Munafo*, 50 NY2d at 331).

Defendant's remaining contentions are either without merit or academic.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order affirmed.