[984 NE2d 902, 960 NYS2d 704]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TREVIS
D. BAKER, Appellant. (Appeal No. 1.)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TREVIS
D. BAKER, Appellant. (Appeal No. 2.)

Argued January 8, 2013; decided February 7, 2013

## POINTS OF COUNSEL

*Timothy P. Donaher, Public Defender*, Rochester (*Timothy S. Davis* of counsel), for appellant in the first above-entitled action. As the words defendant uttered were neither erotic in nature nor likely to provoke a violent response, his criticism of Officer Michael Johnson was constitutionally protected, and therefore could not serve as a valid predicate for his arrest. (*Johnson v Campbell*, 332 F3d 199; *Texas v Johnson*, 491 US 397; *Terminiello v Chicago*, 337 US 1; *Houston v Hill*, 482 US 451; *People v Cradle*, 160 AD2d 891; *People v Delhall*, 131 AD2d 870; *Riley v County of Broome*, 95 NY2d 455; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Matter of Auerbach v Board of Educ. of City School Dist. of City of N.Y.*,

86 NY2d 198; *Doctors Council v New York City Employees' Retirement Sys.*, 71 NY2d 669.)

*Timothy P. Donaher, Public Defender*, Rochester (*Timothy S. Davis* of counsel), for appellant in the second above-entitled action. If this Court reverses defendant's conviction of criminal possession of a controlled substance in the third degree under indictment No. 409/2006, then his conviction of assault in the second degree under indictment No. 368/2006 must also be reversed, for he pleaded guilty under this indictment with the understanding that the sentence imposed would run concurrently with the sentence imposed on the other. (*Boykin v Alabama*, 395 US 238; *Santobello v New York*, 404 US 257; *Brady v United States*, 397 US 742; *Johnson v Lumpkin*, 769 F2d 630; *People v Rowland*, 8 NY3d 342; *People v Taylor*, 80 NY2d 1; *People v Boston*, 75 NY2d 585; *People v Fuggazzatto*, 62 NY2d 862; *People v Calvi*, 89 NY2d 868; *People v Seaberg*, 74 NY2d 1.)

*Sandra Doorley, District Attorney*, Rochester (*Geoffrey Kaeuper* of counsel), for respondent in the first and second above-entitled actions. I. The police had probable cause to arrest defendant for disorderly conduct. (*People v Furet*, 12 NY3d 740; *People v Weaver*, 16 NY3d 123; *People v Bakolas*, 59 NY2d 51; *People v Todaro*, 26 NY2d 325; *People v Tichenor*, 89 NY2d 769; *People v Munafo*, 50 NY2d 326; *People v Dietze*, 75 NY2d 47; *Chaplinsky v New Hampshire*, 315 US 568; *Miller v California*, 413 US 15; *People v Couser*, 94 NY2d 631.) II. If reversal were warranted in the drug case, that would not invalidate the assault conviction. (*People v Fuggazzatto*, 62 NY2d 862; *People v Lowrance*, 41 NY2d 303.)

*New York Civil Liberties Union Foundation*, New York City (*Daniel Mullkoff* and *Arthur Eisenberg* of counsel), for New York Civil Liberties Union, amicus curiae. I. The speech at issue in this case is protected by the First Amendment. (*Ashcroft v American Civil Liberties Union*, 535 US 564; *Brandenburg v Ohio*, 395 US 444; *Cohen v California*, 403 US 15; *Chaplinsky v New Hampshire*, 315 US 568; *Gooding v Wilson*, 405 US 518; *R.A.V. v St. Paul*, 505 US 377; *Hess v Indiana*, 414 US 105; *Texas v Johnson*, 491 US 397; *Houston v Hill*, 482 US 451; *Lewis v New Orleans*, 415 US 130.) II. The Court's analysis in *People v Tichenor* (89 NY2d 769 [1997]) does not apply because defendant here was engaged in pure speech, not conduct. (*Norwell v Cincinnati*, 414 US 14; *Mt. Healthy City Bd. of Ed. v Doyle*, 429 US 274; *Devenpeck v Alford*, 543 US 146.)

**OPINION OF THE COURT**

GRAFFEO, J.

Following a verbal exchange between defendant and a police officer on a Rochester street, defendant was arrested for disorderly conduct. He challenged the legality of his arrest, arguing that the statements and conduct that preceded it did not rise to the level of disorderly conduct. We agree.

The facts giving rise to the disorderly conduct arrest are undisputed. On a spring evening at around 6:30 p.m., Officer Johnson and another police officer were parked in separate marked police vehicles on a residential street in Rochester. Johnson noticed that a woman (later determined to be defendant's girlfriend) was standing in front of a house across the street from where he was parked and was videotaping his activities. Curious about the woman's identity, Johnson ran the license plate of a Cadillac that was parked in her driveway and discovered that the plate number had been issued for a Toyota—not a Cadillac. Johnson briefly stepped out of his car to ask who owned the automobile and the woman responded that it was her grandfather's vehicle. The officer then reentered his patrol car. A few minutes later, defendant Trevis Baker approached the open passenger-side window of Johnson's car, leaned his head in and inquired why Johnson had checked the license plate. Johnson said something to the effect that he could run a plate if he wanted to.

Defendant started backing away from the police vehicle towards the middle of the street, swearing at the officer. When Officer Johnson asked "what did you say," defendant repeated the profanity and accused Johnson of harassing him. After radioing his partner that he intended to make an arrest, Johnson exited his vehicle and, with the assistance of his partner, placed defendant under arrest. These activities apparently attracted the attention of various civilian bystanders and, by the time of the arrest, about 10 people had congregated on the sidewalk behind defendant and his girlfriend. In a search incident to arrest, the police discovered that defendant was in possession of 25 bags of crack cocaine. Defendant was subsequently indicted and charged with criminal possession of a controlled substance third degree, criminal possession of a controlled substance fourth degree and disorderly conduct.

Defendant moved to suppress the drugs found on his person, contending that the arrest for disorderly conduct was illegal,

rendering the contraband fruit of the poisonous tree. At the suppression hearing, Officer Johnson testified to the events described above and the People introduced the videotape of the incident made by defendant's girlfriend, which largely corroborated Johnson's testimony. At the close of the proof, defense counsel argued that the police lacked probable cause for the disorderly conduct arrest because defendant's statements were not uttered with the intent to annoy, harass or alarm, the culpable mental state under the disorderly conduct statute (*see* Penal Law § 240.20 [3]). Defense counsel further asserted that the First Amendment protects the right of a citizen to express disagreement with police actions, which was precisely all that defendant was doing in this case.

Crediting Officer Johnson's uncontradicted testimony, County Court found that the police had probable cause to make the arrest, meaning that the resulting search was lawful and the contraband discovered incident thereto was admissible at trial. Following the denial of the suppression application, defendant was presented with a plea proposal that would simultaneously resolve the drug possession charges and unrelated assault charges from a separate pending indictment. If defendant pleaded guilty to one count of criminal possession of a controlled substance third degree in satisfaction of this indictment and one count of assault second degree in satisfaction of the assault indictment, County Court promised that he would receive concurrent terms of six years in prison plus appropriate postrelease supervision (five years on the assault conviction and three years on the drug conviction). The court clarified that this disposition would not preclude defendant from challenging the denial of suppression on appeal, which defense counsel indicated was his intent. Defendant accepted this resolution, pleading guilty to the two offenses in satisfaction of both indictments, and County Court imposed the agreed-upon sentence.

In an appeal from the judgment in the drug possession case, defendant sought review of the suppression ruling (appeal No. 1) but the Appellate Division summarily affirmed (82 AD3d 1656 [2011]). In a separate appeal (appeal No. 2), defendant sought vacatur of his plea in the assault case in the event that he succeeded in his challenge to the suppression order. That appeal was also rejected by the Appellate Division (82 AD3d 1657 [2011]). A Judge of this Court granted defendant leave to appeal from both Appellate Division orders (18 NY3d 857 [2011]) and we now reverse.

Defendant argues that, if applied to criminalize his statements and conduct, Penal Law § 240.20 (3)—the disorderly conduct statute underlying his arrest—violates the First Amendment. He contends that the Court should avoid this result by construing the provision narrowly to permit prosecution only when the statements uttered by the accused either constitute obscenity (as that term has been defined in First Amendment cases) or "fighting words" and he claims that his arrest was unlawful because his utterances did not fall into either category. Before we can address what is, in effect, an as-applied challenge to the constitutional validity of the statute, we must first determine whether the Penal Law § 240.20 (3) arrest was lawful under our existing precedent. Thus, the threshold issue presented in this case is whether there was a record basis for the finding of the courts below that defendant's disorderly conduct arrest was supported by probable cause.* "Probable cause exists if the facts and circumstances known to the arresting officer warrant a prudent [person] in believing that the offense has been committed" (*People v Oden*, 36 NY2d 382, 384 [1975]).

Under Penal Law § 240.20 (3), "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [i]n a public place, he uses abusive or obscene language, or makes an obscene gesture." The offense has existed in one form or another for more than a century and has spawned a significant body of case law. As is clear from the precedent, critical to a charge of disorderly conduct is a finding that defendant's disruptive statements and behavior were of a public rather than an individual dimension. This requirement stems from the mens rea component, which requires proof of an intent to threaten public safety, peace or order (or the reckless creation of such a risk). Thus, "a person may be guilty of disorderly conduct only when the situation extends beyond the exchange between the individual disputants to a point where it becomes a potential or

---

* In the typical case, probable cause determinations involve mixed questions of law and fact that are beyond our further review power if supported by any evidence in the record (*see e.g. People v Furet*, 12 NY3d 740 [2009]). But here an issue of law is presented because the probable cause issue distills to whether, viewed in the light most favorable to the People, the defendant's statements and associated conduct witnessed by the police officer constituted the crime of disorderly conduct, justifying an arrest on that charge (*see People v Oden*, 36 NY2d 382, 384 [1975]; *see generally People v McRay*, 51 NY2d 594 [1980]).

immediate public problem" (*People v Weaver*, 16 NY3d 123, 128 [2011] [internal quotation marks and citation omitted]).

The "public harm" element is what distinguishes the disorderly conduct statute from other offenses that contain similar requirements but encompass disputes of a more personal nature (*see People v Tichenor*, 89 NY2d 769 [1997], *cert denied* 522 US 918 [1997] [contrasting disorderly conduct statute with harassment statute struck down in *People v Dietze*, 75 NY2d 47 (1989)]). As we have previously explained, this element performs an important narrowing function (*see People v Bakolas*, 59 NY2d 51 [1983]).

The significance of the public harm element in disorderly conduct cases cannot be overstated. In virtually all of our prior decisions, the validity of disorderly conduct charges has turned on the presence or absence of adequate proof of public harm. To determine whether the record supports an inference that the requisite mens rea was present, we have employed a contextual analysis that turns on consideration of many factors, including "the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances" (*Weaver*, 16 NY3d at 128). We have clarified that the risk of public disorder does not have to be realized but the circumstances must be such that defendant's intent to create such a threat (or reckless disregard thereof) can be readily inferred (*id.; People v Todaro*, 26 NY2d 325, 329 [1970]).

For example, in *Weaver* (16 NY3d 123), the Court upheld a conviction involving a newlywed who created a disturbance that spilled from the parking lot of a hotel into the area outside a mini-mart and gas station in the middle of the night. When a police officer drove up to the hotel, which was situated in a quiet village, she found defendant yelling and waving his arms at his bride, who was seated on a curb weeping while still in full wedding attire. In the presence of the officer, defendant issued a stream of obscenities at his wife in a loud, aggressive and threatening tone. He then turned his attention to the police officer who had attempted to intervene, telling her that if she put her "hands" on him, she would be taking him to jail. After failing to heed repeated warnings to stop his disruptive behavior and calm down, defendant was arrested for disorderly conduct. We held that the arrest was lawful, concluding there was sufficient evidence that defendant's statements and conduct evidenced an

intent to create a risk of public harm given the late hour, the quiet nature of the surrounding community and the protracted, increasingly aggressive nature of defendant's vocalizations.

Likewise, in *Tichenor* (89 NY2d 769), we declined to disturb a conviction that arose from a late night encounter between a bar patron and a police officer on the threshold of a busy drinking establishment. There, defendant uttered an obscenity and spit at the officer, who was walking by; defendant then shoved the officer as he approached. Intending to make an arrest for disorderly conduct, the officer—who was alone on foot patrol—directed defendant to step onto the sidewalk. A crowd of patrons gathered, yelling at the officer to leave defendant alone. At this juncture, defendant retreated into the bar, the officer followed and a scuffle ensued between defendant, the officer and a number of other bar patrons. In *Tichenor*, the Court had no difficulty inferring that the mens rea requirement was met—that there had been the intentional or reckless initiation of a risk of public harm. There, the risk came to fruition since defendant's statement and conduct led to a brawl involving himself, the officer and numerous other bar patrons—a predictable result given the context of his obstreperous statements and conduct.

In contrast, we concluded that the public harm element was lacking in *People v Munafo* (50 NY2d 326 [1980]), a case where a landowner engaged in a confrontation with a State Power Authority construction crew that was attempting to erect a transmission line on a right-of-way that cut through his farmland. After firing a shot into the air (and being divested of his gun), defendant positioned himself in the path of a backhoe and, when he refused to move after being ordered to do so by police, he was arrested for disorderly conduct. Eight or 10 people witnessed the incident but no one was attracted to the scene by defendant's conduct, nor did they get involved in his protest. We determined that the evidence was insufficient to support the disorderly conduct conviction since defendant's actions took place in broad daylight on his own property far removed from any public thoroughfare, business or residence. Based on these facts, the Court observed that there was no indication that defendant sought to incite or involve the spectators, who were in the area before the confrontation, and the only fair inference was that "the differences between the authority and the defendant were confined to these two disputants rather than spread to the public" (*id.* at 332).

The same was true in *People v Pritchard* (27 NY2d 246 [1970]) where an off-duty deputy sheriff moonlighting as security for a

teenage night club was present when a fight broke out between defendant and another youth. The proof indicated that defendant had reflexively become entangled in the scuffle when the other boy uttered provocative epithets. Although a group of onlookers had gathered around the two brawlers, the Court held that there was insufficient evidence to infer that defendant recklessly engendered a risk of public disorder. Instead, "[t]his purely personal clash and momentary teenage flare-up did not contain the seeds of such a crowd reaction nor did it attain the degree of gravity warranting criminal prosecution under the statute" (*id.* at 249). Moreover, there was no indication that the crowd of spectators "were moved by anything more than curiosity or whatever entertainment value the incident afforded" (*id.* at 248).

Under the multifactored analysis we have used in these prior cases, there is no record basis for the finding of probable cause in this case because the proof is insufficient to support the public harm element. During daylight hours on a public street, defendant made two abusive statements claiming harassment to a police officer who was seated in a patrol car. It is clear from the videotape that the public outburst was extremely brief, lasting about 15 seconds. The statements were not accompanied by menacing conduct—defendant was stepping away from the vehicle when he made them. And there is no basis to infer that Officer Johnson felt threatened by the statements. If he had, he would likely have remained in his vehicle, rolled up the windows, radioed his partner to do the same and requested backup. Instead, Johnson immediately exited his vehicle. The fact that another police officer was present—also safely ensconced inside his own patrol car and fully able to provide assistance—diluted the risk that others in the vicinity would join forces with defendant and gang up on Johnson.

Here, the risk to public order was far less than in *Tichenor* where the officer was alone on foot late at night when defendant instigated a confrontation on the doorstep of a crowded bar only a few feet away from other inebriated patrons. This case is also significantly distinguishable from *Weaver*, where a public spectacle was created by defendant yelling at his new bride. There, the protracted encounter involved more than a brief exchange of words between a defendant and a police officer. In *Weaver*, the focus of defendant's invective was his wife—his attention was redirected at the police officer only after she came to the woman's assistance—and defendant refused to stop even

after multiple warnings by the police, supporting the inference that the disruptive behavior would continue and perhaps escalate absent interruption by the police.

Although it is true in this case that a group of bystanders gathered around defendant and his girlfriend—a fact certainly relevant to our public harm analysis—there is no evidence that the bystanders expressed any inclination, verbally or otherwise, to involve themselves in the dispute between defendant and Officer Johnson, nor did the suppression court draw any such inference. The assembly here was comparable to the group that gathered to watch the bar fight in *Pritchard* because there is no basis to infer that these spectators were motivated by anything other than curiosity. And, unlike *Weaver*, there was no significant likelihood that defendant's brief statements—loud though they were—would disrupt peace and order in the vicinity. As is evident from the videotape, the incident occurred around dinner time on a heavily-populated city street bustling with car traffic and pedestrian activity.

Finally, this case includes one more factor worthy of consideration. Here, both at its inception and conclusion, the verbal exchange was between a single civilian and a police officer. The fact that defendant's abusive statements were directed exclusively at a police officer—a party trained to defuse situations involving angry or emotionally distraught persons—further undermines any inference that there was a threat of public harm, particularly since the police officer was in a position of safety and could have closed his windows and ignored defendant. We do not suggest that the public harm element can never be present in such encounters; *Tichenor* demonstrates that this is not the case. But isolated statements using coarse language to criticize the actions of a police officer, unaccompanied by provocative acts or other aggravating circumstances, will rarely afford a sufficient basis to infer the presence of the "public harm" mens rea necessary to support a disorderly conduct charge.

After consideration of all relevant factors, we conclude that defendant's arrest for disorderly conduct was not supported by probable cause due to insufficient proof on the public harm element. Because the arrest was unlawful under our long-standing precedent, we have no occasion to address defendant's First Amendment arguments.

Since we have concluded that the arrest was invalid, the cocaine seized during the search incident to that arrest should

have been suppressed. In this case, because the disorderly conduct charge was unlawful and the cocaine discovered during the search (the only evidence underlying those charges) must be suppressed, it follows that the indictment should have been dismissed in its entirety. Defendant is also entitled to vacatur of his guilty plea in the assault case, which was predicated on the promise that he would receive a sentence of six years of incarceration to be served concurrently to the identical prison sentence on the drug conviction—a promise that can no longer be kept (*see People v Pichardo*, 1 NY3d 126 [2003]).

Accordingly, in appeal No. 1, the order of the Appellate Division should be reversed, defendant's motion to suppress physical evidence granted and the indictment dismissed. In appeal No. 2, the order of the Appellate Division should be reversed, defendant's guilty plea vacated and the case remitted to County Court for further proceedings on the indictment.

Chief Judge LIPPMAN and Judges READ, SMITH and PIGOTT concur.

In *People v Baker* (appeal No. 1): Order reversed, defendant's motion to suppress physical evidence granted and the indictment dismissed.

In *People v Baker* (appeal No. 2): Order reversed, defendant's plea vacated and case remitted to Monroe County Court for further proceedings on the indictment.