[969 NYS2d 537]

In the Matter of Dionne Cassie, Respondent, v Richard Cassie, Appellant.

Second Department, July 24, 2013

APPEARANCES OF COUNSEL

*Etta Ibok*, Brooklyn, for appellant.

## OPINION OF THE COURT

SKELOS, J.P.

The issue presented on this appeal is whether, to establish the family offense of disorderly conduct, a petitioner must demonstrate that the challenged conduct was intended to cause, or recklessly created a risk of causing, public inconvenience, annoyance, or alarm. We hold that such a showing is required, and, since the petitioner in the present case failed to meet that burden, we reverse the order of protection issued in her favor.

On February 15, 2012, the petitioner, Dionne Cassie (hereinafter the wife), filed a family offense petition against her husband, Richard Cassie (hereinafter the husband). The petition alleged that, on February 11, 2012, the parties engaged in a dispute or altercation because the husband had promised that he was going to leave the marital home and had "reneged on his promise." According to the wife, the husband attempted, unsuccessfully, to push her down a flight of stairs, twisted her arm, causing pain, and pushed her against a wall. Based upon this alleged conduct, the wife asserted that the husband had committed the family offenses of, among others, attempted assault, assault in the second or third degree, harassment in the first or second degree, and disorderly conduct. The wife requested an order of protection requiring the husband to stay away from her and the marital home.

At a hearing on the petition, the wife testified that the parties had been married since 1988, and lived in a two-family house. The wife asserted that, prior to the incident, the husband had promised that he was leaving the marital home. On February 11, 2012, the wife changed the locks of the home and packed a suitcase for the husband. The wife testified that, at approximately 10:00 p.m. on that day, she and the husband became engaged in an altercation in the home, during which he tried to push or pull her down the stairs, he pushed her up against a wall, and he twisted her arm. The wife denied having pushed or struck the husband, but admitted that she bit him. The husband called the police, who responded to the scene, but did not make any arrests. The wife did not file a police report or seek medical attention.

The husband testified that, around the time of the incident, he was not working full time, and the wife was angry and told him that he had to leave the home because he had not paid the electric bill. On February 11, 2012, when the husband tried to open the door to the home, his key did not work. The husband rang the bell and "[s]omeone" opened the door. The husband then started to walk up the stairs while the wife was coming down the stairs. According to the husband, the wife started to push the husband down the stairs, and scratched, bit, and hit him, because she did not want him in the house. The husband showed the court some marks on his arm that he claimed were bite marks. At that point, the husband called the police. The husband ultimately left the home voluntarily, and slept in the garage of the home that night. No one else witnessed the incident because the parties' daughters (who were approximately 16 and 17 years old at the time) were upstairs watching television. The husband asserted that he never tried to push the wife down the stairs, and was never actually above her on the staircase.

At the close of the evidence, the Family Court found that the incident on February 11, 2012, was "a really bad fight" and that both parties were "fighting with each other." However, the court observed, it only had one petition before it, and "to the extent that it's only [the wife's] petition," the court found that the husband "engaged in the offense of disorderly conduct in the home, in that he fought with [the wife]." The court thereupon issued a two-year order of protection, directing the husband to refrain from various forms of conduct, such as harassment and disorderly conduct.

The husband appeals from the order of protection. He principally argues that the wife failed to establish the offense of disorderly conduct because she failed to show that his conduct was committed with the intent to cause, or recklessly created the risk of causing, public inconvenience, annoyance, or alarm.

The criminal and family courts have concurrent jurisdiction over any proceeding concerning acts which would constitute disorderly conduct as defined by the Penal Law when committed between spouses, among others (*see* Family Ct Act § 812; CPL 100.07, 530.11 [1]; *see also* NY Const, art VI, § 13 [b] [7]). In a family offense proceeding, the petitioner has the burden of establishing, by a "fair preponderance of the evidence," that the charged conduct was committed as alleged in the petition (Family Ct Act § 832; *see Matter of Testa v Strickland*, 99 AD3d 917 [2012]; *Matter of Foxworth v DeJesus*, 74 AD3d 1064 [2010]).

Under the Penal Law,

> "A person is guilty of disorderly conduct when, *with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:*
>
> "1. He engages in fighting or in violent, tumultuous or threatening behavior; or
>
> "2. He makes unreasonable noise; or
>
> "3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or
>
> "4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or
>
> "5. He obstructs vehicular or pedestrian traffic; or
>
> "6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or
>
> "7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose" (Penal Law § 240.20 [emphasis added]).

As the Court of Appeals has emphasized, in the context of a criminal case, "critical to a charge of disorderly conduct is a finding that [the] disruptive statements and behavior were of a public rather than an individual dimension" (*People v Baker*, 20 NY3d 354, 359 [2013]; *see People v Munafo*, 50 NY2d 326, 331

[1980]). In that respect, "a person may be guilty of disorderly conduct only when the situation extends beyond the exchange between the individual disputants to a point where it becomes 'a potential or immediate public problem' " (*People v Weaver*, 16 NY3d 123, 128 [2011], quoting *People v Munafo*, 50 NY2d at 331).

> "In assessing whether an act carries public ramifications, relevant factors to consider are the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances" (*People v Weaver*, 16 NY3d at 128; *see People v Baker*, 20 NY3d 354 [2013]).

The complicating factor in the present case, which is a family offense proceeding rather than a criminal action, is that Family Court Act § 812 provides: "For purposes of this article, 'disorderly conduct' includes disorderly conduct not in a public place" (Family Ct Act § 812 [1]). The husband contends that, even though the Family Court Act specifies that the conduct need not occur in a public place, the petitioner must nonetheless prove either an intent to cause public inconvenience, annoyance, or alarm, or the reckless creation of a risk thereof.

The First and Fourth Departments of the Appellate Division have held, albeit summarily, that lack of proof of an intent to cause, or reckless creation of a risk of causing, public ramifications, required dismissal of those branches of family offense petitions that charged the respondent with disorderly conduct. Specifically, in *Matter of Janice M. v Terrance J.* (96 AD3d 482 [2012]), the petitioner testified that the respondent, her son-in-law, threatened to have someone beat her up, told her that he would beat her, and threatened to hit her with a broom. While this testimony established a prima facie case of harassment, the First Department held that the Family Court had properly granted the respondent's motion to dismiss the branch of the petition alleging disorderly conduct. In that respect, the Court concluded: "there was no evidence that respondent intended to cause public inconvenience, annoyance or alarm or that his conduct in the private residence recklessly created such a risk" (*id.* at 483). In *Matter of Brazie v Zenisek* (99 AD3d 1258 [2012]), in which the respondent argued with, and made threats against, the petitioner and her fiancé, the Fourth Department held: "The

offense of disorderly conduct was not established because there was no evidence that respondent intended 'to cause *public* inconvenience, annoyance or alarm, or recklessly creat[ed] a risk thereof' " (*id.* at 1259, quoting Penal Law § 240.20).

We similarly hold that, even where the conduct at issue is alleged to have occurred in a private residence, in order for a petitioner to meet his or her burden of establishing the family offense of disorderly conduct, there must be a prima facie showing that the conduct was either intended to cause, or recklessly created a risk of causing, public inconvenience, annoyance, or alarm. The intent to cause, or recklessness in causing, public harm, is the mens rea of the offense of disorderly conduct (*see People v Baker*, 20 NY3d 354 [2013]). The plain language of the subject provision of Family Court Act § 812, in contrast, provides only that the *conduct* need not occur in a public place (*see* Family Ct Act § 812). The plain language of Family Court Act § 812 therefore pertains only to the actus reus of the offense—specifically, the place where it is committed—and does not speak to the mens rea of the offense. Indeed, since Family Court Act § 812 does not specify an alternative culpable mental state, if the mens rea provided for in the Penal Law were not applicable in family offense proceedings, it is unclear what the mens rea of this family offense would be.

"Generally, in order to properly interpret a statute, a court should first consider the statute's plain language, which is 'the most compelling evidence of the Legislature's intent' " (*Matter of Richardson v Richardson*, 80 AD3d 32, 37 [2010], quoting *Matter of Tompkins County Support Collection Unit v Chamberlin*, 99 NY2d 328, 335 [2003]). It is clear from the face of the subject provision of Family Court Act § 812 that it applies only to the place where the conduct occurs, and, thus, we glean the legislature's intent from the words of the statute (*see Giblin v Nassau County Med. Ctr.*, 61 NY2d 67, 74 [1984]; *Matter of Richardson*, 80 AD3d at 38), and conclude that section 812 was only intended to prevent the Family Court from denying family offense petitions charging disorderly conduct merely because the conduct occurred in a private residence. One can certainly contemplate conduct occurring in a private residence that is intended to cause, or evinces a reckless disregard of causing, public harm. Such conduct might include, for example, a loud fight, or a loud argument with disturbing content, occurring in an apartment building late at night, or under other circumstances where the public may reasonably be expected to hear or

see the altercation. As the Court of Appeals has observed, "the risk of public disorder does not have to be realized," in order to infer that an individual intended to cause, or recklessly disregarded the risk of causing, such a threat (*People v Baker*, 20 NY3d at 360; *see People v Weaver*, 16 NY3d at 128 ["there is no per se requirement that members of the public must be involved or react to the incident"]; *People v Todaro*, 26 NY2d 325, 328-329 [1970]).

Relatedly, the case law interpreting the Penal Law statute in the criminal context emphasizes that the statute is, at its very essence, one geared toward intentional or reckless creation of public disturbance or disorder (*see e.g. People v Baker*, 20 NY3d at 360 ["The significance of the public harm element in disorderly conduct cases cannot be overstated. In virtually all of our prior decisions, the validity of disorderly conduct charges has turned on the presence or absence of adequate proof of public harm"]; *People v Weaver*, 16 NY3d at 128; *People v Tichenor*, 89 NY2d 769, 773-774 [1997], *cert denied* 522 US 918 [1997]; *People v Munafo*, 50 NY2d at 331). Thus, to interpret the subject provision of Family Court Act § 812 as eliminating the necessity of establishing an intent to cause public ramifications, or reckless creation of a risk thereof, is not only to excise the mens rea from the offense, but also to undermine its underlying purpose.

Furthermore, if the family offense of disorderly conduct were construed as not requiring an intent to cause, or reckless disregard of a risk of causing, public disturbance, it would overlap with the family offense of harassment in the second degree. A person commits that offense when,

> "with intent to harass, annoy or alarm another person . . . [h]e or she . . . subjects such other person to physical contact, or attempts or threatens to do the same; or . . . engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose" (Penal Law § 240.26 [1], [3]).

The mens rea elements of these two offenses are complementary in that "disorderly conduct" covers an intent to annoy or alarm the public (or recklessly creating a risk thereof), while harassment in the second degree covers an intent to annoy or alarm a particular person. Therefore, if the mens rea were removed from the offense of disorderly conduct, the two offenses might be interpreted (depending upon what mens rea was applied to the family offense of disorderly conduct) as being substantially

equivalent (*see People v Baker*, 20 NY3d at 360 ["The 'public harm' element is what distinguishes the disorderly conduct statute from other offenses that contain similar requirements but encompass disputes of a more personal nature"]). The family offense of harassment in the second degree serves to protect individuals from annoying or alarming behavior that is confined to the individual disputants.

For the foregoing reasons, we conclude that the wife was required to prove that the husband's conduct was committed with the intent to cause, or recklessly posed a risk of causing, public inconvenience, annoyance, or alarm. The wife did not sustain that burden. She did not adduce any testimony regarding the layout of the marital home, or the proximity of neighbors or other members of the public. Nor did she testify that the husband was screaming or otherwise being so loud that others might reasonably be expected to hear him. Further, while the husband testified that his two daughters were upstairs watching television at the time of the incident, assuming arguendo that they could constitute "the public," there is no evidence that the husband intended to cause them inconvenience, annoyance, or alarm, and the evidence was insufficient to demonstrate that he recklessly created a risk thereof. In that respect, there is no evidence regarding how close the daughters were to the confrontation or whether the husband's conduct would have been noticeable to someone not in the immediate vicinity. Accordingly, the wife failed to establish the family offense of disorderly conduct (*see Matter of Bartley v Bartley*, 48 AD3d 678 [2008]; *cf. Matter of Hunt v Hunt*, 51 AD3d 924, 925 [2008]; *Matter of Rankoth v Sloan*, 44 AD3d 863 [2007]; *Matter of Kraus v Kraus*, 26 AD3d 494 [2006]). We therefore reverse the order of protection issued in her favor, which was based solely on the finding that the husband had committed the family offense of disorderly conduct.

Accordingly, the order of protection is reversed, on the facts, the petition is denied, and the proceeding is dismissed.

LEVENTHAL, HALL and SGROI, JJ., concur.

Ordered that the order of protection is reversed, on the facts, without costs or disbursements, the petition is denied, and the proceeding is dismissed.