*408 OPINION OF THE COURT
Michael F. McKeon, J.
On December 23, 2012, defendant was arrested and charged with two counts of disorderly conduct. Defendant brought an omnibus motion, whereby she moved, among other things, to dismiss the charges. A probable cause hearing was held and testimony taken from Auburn Police Officer Jared Georgi. Following the hearing, the court reserved decision on the motion to dismiss and asked the People and defendant to submit a memorandum of law.
On December 23, 2012, at approximately 5:04 p.m., Officer Georgi was driving in his patrol car in the westbound lane of Genesee Street in the City of Auburn, New York. Officer Georgi observed two individuals, a male and a female, walking west down the center of the eastbound lane of Genesee Street. Officer Georgi stopped his patrol car and asked the two individuals to move onto the sidewalk. The male complied, but the female, who is the defendant herein, continued to walk in the road a bit longer before moving to the sidewalk. Defendant then yelled for the officer’s attention and displayed her two middle fingers to the officer. The officer asked defendant to stop making such gestures after which defendant grabbed her crotch and pulled up with her hand. Thereafter, the officer pulled his patrol car to the south side of the road before emerging to arrest defendant for disorderly conduct.
Defendant is charged with disorderly conduct under subdivisions (2) and (3) of Penal Law § 240.20. Pursuant to Penal Law § 240.20 (2), a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she makes unreasonable noise. Pursuant to Penal Law § 240.20 (3), a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, in a public place, he uses abusive or obscene language. In the accusatory instrument herein, it is alleged that defendant yelled to the officer, including saying “arrest me,” and made obscene gestures including giving two middle fingers and grabbing her crotch. According to the information, “[t]he defendant’s actions did create the risk for public alarm as cars were stopped behind patrol in view of the defendant’s behavior.”
In analyzing a charge of disorderly conduct, a court must look to whether there was any actual or risk of “public harm” as a *409 result of a defendant’s actions. It is this public harm element that differentiates the charge of disorderly conduct from other offenses with similar requirements (see People v Baker, 20 NY3d 354 [2013]). Actual public inconvenience, annoyance or alarm is not required; an individual may be found guilty of disorderly conduct even if no members of the public are involved in the incident (see People v Weaver, 16 NY3d 123 [2011]).
Nevertheless, “critical to a charge of disorderly conduct is a finding that defendant’s disruptive statements and behavior were of a public rather than an individual dimension” (Baker, 20 NY3d at 359). Thus, for a disorderly conduct charge to stand, the situation must extend beyond the individual disputants to a point where it can lead to a potential or immediate public problem (see People v Munafo, 50 NY2d 326 [1980]; see also Weaver, 16 NY3d at 128). In determining whether a dispute causes a public inconvenience, courts will consider such factors as the time and place of the incident, the nature and character of the conduct, the number of other people in the area, whether others are drawn to the disturbance, and, if so, the nature and number of those attracted, along with other relevant circumstances (see Baker, 20 NY3d at 360; People v Todaro, 26 NY2d 325 [1970]).
In the recent case of People v Baker, the Court of Appeals concluded that the defendant’s arrest for disorderly conduct was not supported by probable cause in that the public harm element had not been met (see Baker, 20 NY3d at 363). In reaching its conclusion, the court considered numerous factors, including the fact that the outburst was brief, lasting approximately 15 seconds; that the outburst occurred around dinner time in a heavily-populated city street “bustling” with car traffic and pedestrians; that the verbal exchange was between defendant and the arresting officer; and that the police officer was safely in his car and could have closed his windows and ignored the defendant (see id.). Although the verbal exchange between the defendant and the officer in Baker attracted a group of about 10 bystanders, the court emphasized that there was no evidence that the bystanders “expressed any inclination ... to involve themselves” in the dispute between the two (id.).
From the Baker Court’s analysis, the public harm element requires more than a mere risk that the public may become aware of or even observe the incident: it requires the risk that the incident could become a potential or immediate public *410 problem (see Baker, 20 NY3d at 359-360; Weaver, 16 NY3d at 128). Here, defendant’s actions and statements were directed at Officer Georgi. There is no indication that anyone other than defendant and the officer was involved in the exchange. According to Officer Georgi, the entire exchange was relatively quick, no more than two to three minutes. While there were cars passing by, only one may have stopped behind the patrol car. However, why the car stopped is unknown; as the Baker Court stated, “there is no basis to infer that these spectators were motivated by anything other than curiosity” (see Baker, 20 NY3d at 363).
Moreover, as in the Baker case, Officer Georgi was in the safety of his patrol car at the time of the incident. The gestures and statements made by defendant, although crude and disrespectful, were not likely to incite further events, nor is there any indication that defendant moved toward the officer in a threatening manner. In fact, Officer Georgi emerged from his vehicle to make the arrest, clearly unafraid of any public uprising or escalation of the events (cf. People v Tichenor, 89 NY2d 769 [1997] [gathering of bar patrons necessitated officer’s call for back up]). There is no indication in the record that any member of the public even knew what was occurring given the direct and limited exchange, the time of day and the location of the event on a main street in a mixed residential and commercial neighborhood.
Officer Georgi could have just as easily ignored defendant’s crude gestures, particularly given the fact that defendant complied with his commands to move onto the sidewalk. As the Baker Court emphasized, “isolated statements using course language to criticize the actions of a police officer, unaccompanied by provocative acts or other aggravating circumstances, will rarely afford a sufficient basis to infer the presence of the ‘public harm’ mens rea necessary to support a disorderly conduct charge” (id. at 363). The brief exchange between the defendant and the officer here did not create a risk that the incident could become a potential or immediate public problem. As the public harm element of the disorderly conduct charge has not been met, the police lacked probable cause to arrest the defendant.
Accordingly, defendant’s motion to dismiss is hereby granted and the charges of disorderly conduct are dismissed.