People v Curry (2020 NY Slip Op 20313)

People v Curry

2020 NY Slip Op 20313 [70 Misc 3d 35]

Accepted for Miscellaneous Reports Publication

Supreme Court, Appellate Term, Second Department, 9th and 
10th Judicial Districts

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, February 17, 2021

[*1]

The People of the State of New York, Respondent,
v
Ernest Curry, Appellant.

Supreme Court, Appellate Term, Second Department, 9th and 10th Judicial Districts, November 19, 2020

APPEARANCES OF COUNSEL

Legal Aid Society (Tammy Feman and Dori Cohen of counsel) for appellant.
Madeline Singas, District Attorney (Andrea M. DiGregorio and Amanda Manning of counsel), for respondent.

{**70 Misc 3d at 37} OPINION OF THE COURT

Memorandum.

Ordered that the judgment of conviction is affirmed.
Defendant was charged in an accusatory instrument with disorderly conduct in violation of Penal Law § 240.20 (3) and, in a separate accusatory instrument, with disorderly conduct in violation of Penal Law § 240.20 (5). The People filed a notice, pursuant to CPL 710.30 (1) (a), in which they indicated their intent to offer as evidence at trial certain statements that had been made by defendant at the scene of the incident. Defendant moved to, among other things, dismiss the accusatory instruments on facial insufficiency grounds, and to suppress the statements on the grounds that he had been arrested without probable cause and that the statements had been involuntarily obtained. The People opposed the motion. In an order dated September 26, 2016, the District Court denied the branch of defendant's motion seeking to dismiss the accusatory instruments on facial insufficiency grounds. Following a hearing conducted on November 17, 2016, the court denied suppression, finding that there was probable [*2]cause for defendant's arrest and that the testimony revealed that the officers "really didn't even question" defendant. Thereafter, defendant pleaded guilty to the charge of disorderly conduct in violation of Penal Law § 240.20 (3) in satisfaction of both accusatory instruments and was sentenced to 15 days' imprisonment. On appeal, defendant contends that the charge to which he pleaded guilty was facially insufficient; that the branch of his motion seeking to suppress his statements should have been granted; and that his guilty plea was not made knowingly, voluntarily, or intelligently. "A valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution" (People v Case, 42 NY2d 98, 99 [1977]; see People v Dumay, 23 NY3d 518, 522 [2014]; People v Dreyden, 15 NY3d 100, 103 [2010]). Thus, the facial insufficiency of an accusatory instrument constitutes a jurisdictional defect which is not forfeited by a defendant's guilty plea (see Dreyden, 15 NY3d at 103; People v Konieczny, 2 NY3d 569, 573 [2004]). Where, as here, a defendant has pleaded guilty to the sole charge in an accusatory instrument in satisfaction of multiple accusatory instruments, and, on appeal, raises a facial sufficiency challenge, he{**70 Misc 3d at 38} need challenge only the facial sufficiency of the actual charge to which he pleaded guilty (see People v Mason, 62 Misc 3d 75 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2019]; see also Dumay, 23 NY3d 518). Consequently, this court need examine only the facial sufficiency of the accusatory instrument charging defendant with violating Penal Law § 240.20 (3) (see People v Thiam, 34 NY3d 1040 [2019]).
As defendant did not expressly waive the right to be prosecuted by information, the charge must be evaluated under the standards that govern the sufficiency of a charge contained in an information (see People v Hatton, 26 NY3d 364, 368 [2015]; People v Kalin, 12 NY3d 225, 228 [2009]; see also CPL 100.15, 100.40 [1]). While the law does not require that the accusatory instrument contain the most precise words or phrases most clearly expressing the charges, the offense and factual bases therefor must be sufficiently alleged (see Konieczny, 2 NY3d at 575). "So long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading" (People v Casey, 95 NY2d 354, 360 [2000]; see Konieczny, 2 NY3d at 575).
Pursuant to Penal Law § 240.20 (3), "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [i]n a public place, he uses abusive or obscene language, or makes an obscene gesture." The disorderly conduct statute was designed to proscribe only that type of conduct which has a real tendency to provoke public disorder (see People v Baker, 20 NY3d 354 [2013]; People v Munafo, 50 NY2d 326, 331 [1980]). In other words, the conduct alleged must be of a public nature and must " 'extend[ ] beyond the exchange between the individual disputants to a point where it becomes a potential or immediate public problem' " (Baker, 20 NY3d at 359-360, quoting People v Weaver, 16 NY3d 123, 128 [2011]; People v Tichenor, 89 NY2d 769 [1997]; Munafo, 50 NY2d at 331). While there is no per se requirement that members of the public be involved or react to the incident, the proscribed conduct must be accompanied by a culpable mental state to create a public disturbance, or to recklessly create a risk thereof (see Baker, 20 NY3d at 359; Weaver, 16 NY3d at 128; Tichenor, 89 NY2d at 775; People v Todaro, 26 NY2d 325, 329 [1970]).{**70 Misc 3d at 39}
Here, the accusatory instrument alleged that three police officers had observed defendant [*3]on a public sidewalk talking to an unidentified person. Defendant stated, "I don't give a shit, if they come at me, I got something for them," as he reached into his coat pocket, pulled out a hammer, and began waving it around. Still waving the hammer, defendant crossed the street in front of the police officers, who were in a vehicle, and stated, "Anybody come for me, I got something for you." After the officers exited their vehicle and displayed their shields, defendant placed the hammer into his right coat pocket and stated, "Fuck y'all I don't have to stop and you better not touch me." Defendant then attempted to walk past one of the officers and, when that officer stopped defendant, defendant stated to him, "Touch me again and I will kick your ass. You take that shield off and I will fuck you up." Subsequently, defendant attempted to push past one of the other officers, and defendant stated to him, "I will fuck you up mother fucker." The accusatory instrument further alleged that defendant's conduct had "caused the pedestrian traffic . . . to inconveniently cross the street" and that, when defendant had stepped into the street, he had caused the vehicular traffic to stop.
[1] Based upon these factual allegations, we find that the accusatory instrument charging defendant with violating Penal Law § 240.20 (3) was facially sufficient, as defendant's abusive and obscene language directed at the police officers, while he was walking on a public sidewalk with pedestrians nearby, was uttered with the intent of causing public inconvenience, annoyance or alarm, or recklessly creating a risk thereof (see People v Rubackin, 49 Misc 3d 132[A], 2015 NY Slip Op 51437[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2015]). Furthermore, there was a public dimension to defendant's conduct as it is reasonable to infer that defendant intended to create a public disturbance, or, at the very least, to recklessly create a risk thereof, since his threats to assault the officers, which he made knowing that there were other people around, were accompanied by such menacing conduct as his brandishing a hammer. This case is distinguishable from those in which a defendant's abusive or obscene language was directed only at police officers and was found unlikely to provoke public disorder (see e.g. People v Gonzalez, 25 NY3d 1100 [2015]; Baker, 20 NY3d 354; People v Cuthbert, 56 Misc 3d 140[A], 2017 NY Slip Op 51095[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2017]), since, here, the totality of defendant's conduct created a risk of{**70 Misc 3d at 40} inciting an immediate or potential public disturbance (see e.g. Tichenor, 89 NY2d at 775; People v Allen, 61 Misc 3d 132[A], 2018 NY Slip Op 51454[U] [App Term, 1st Dept 2018]; People v Wallace, 59 Misc 3d 143[A], 2018 NY Slip Op 50718[U] [App Term, 1st Dept 2018]), as it was alleged that pedestrians were thereby caused to cross the street and vehicular traffic to stop.
Pursuant to CPL 710.70 (2), a defendant may seek appellate review of the denial of a motion to suppress notwithstanding that he subsequently pleaded guilty. Such review, however, is limited to the evidence presented at the suppression hearing, and the propriety of the court's ruling must be determined only in light of the evidence that was before the court (see People v Jennings, 295 AD2d 1000 [2002]; People v Kendrick, 256 AD2d 420 [1998]; People v Rivera, 171 AD2d 560 [1991]).
A different police officer from the one who had executed the accusatory instrument was the only witness to testify at the hearing. He testified that he was also present at the scene and generally repeated the facts contained in the accusatory instrument, including all of defendant's statements set forth therein. The additional information that he provided was as follows: the police heavily patrol the intersection of Mirin Avenue and Park Avenue because it is a known [*4]gang area and there had been "some" previous gun and drug arrests at that location. On the date of the incident, he and two other officers were sitting in an unmarked SUV at that intersection with the windows partially down and they saw defendant talking to "a couple of teens around him." When the officers approached and stopped defendant, he did all of the talking and they did not say anything to him. The officer further testified that he did not make any threats or promises of leniency to defendant to cause him to make those statements, and defendant was not in handcuffs when he made them. When asked how the surroundings were affected by defendant's conduct, the officer responded that the pedestrian traffic could not get around defendant and they were moving into the street because "he was making such a scene." He further stated that defendant moved into the street, causing cars to stop.
Probable cause to make an arrest does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense had been committed by the person arrested (see People v Shulman, 6 NY3d 1 [2005]; People v Bigelow, 66 NY2d 417, 423 [1985]; People v Carrasquillo, 54 NY2d 248, 254 {**70 Misc 3d at 41}[1981]). At the conclusion of the hearing, the District Court found that there was probable cause for defendant's arrest for disorderly conduct. In light of the evidence that was before the hearing court, and according great deference to the court's factual findings and credibility determinations (see People v Ocasio, 85 NY2d 982 [1995]; People v Prochilo, 41 NY2d 759 [1977]), we find that there was probable cause for defendant's arrest.
[2] The hearing court additionally denied suppression of the statements made by defendant on the ground that the officers "really didn't even question" defendant. The record supports the court's determination, since defendant's statements were made spontaneously and were not the product of custodial interrogation or its functional equivalent (see People v Rivers, 56 NY2d 476, 479-480 [1982]; People v Sparks, 132 AD3d 513 [2015], affd 29 NY3d 932 [2017]). In fact, the record reveals that the first two statements defendant sought to suppress were both made before the officers had even approached him. With respect to the additional statements that were made by defendant directly to each of the three officers after they had approached him, defendant's statements were self-generated as they were made spontaneously, voluntarily and without apparent external cause, and thereby admissible (see Sparks, 132 AD3d 513).
Generally, a defendant must move to withdraw his guilty plea or vacate the judgment of conviction to preserve a claim that the plea is invalid (see People v Conceicao, 26 NY3d 375, 381 [2015]). However, a narrow exception exists "where the particular circumstances of a case reveal that a defendant had no actual or practical ability to object to an alleged error in the taking of a plea that was clear from the face of the record" (id.; People v Louree, 8 NY3d 541, 546 [2007]). Here, defendant's claim is reviewable on direct appeal, despite the fact that he did not move to withdraw his plea or vacate the judgment of conviction, as he faced a practical inability to move to withdraw the plea because he was sentenced on the same date as the plea proceeding (see People v Sougou, 26 NY3d 1052, 1054 [2015]; Conceicao, 26 NY3d at 382; People v Reinhardt, 58 Misc 3d 151[A], 2018 NY Slip Op 50111[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2018]).
[3] A guilty plea is not invalid solely because the trial court failed to recite a defendant's constitutional rights pursuant to Boykin v Alabama (395 US 238 [1969]; 
see People v Pellegrino, {**70 Misc 3d at 42}26 NY3d 1063 [2015]). Here, the record establishes that defendant was aware that he was [*5]waiving his right to go to trial, his right to take the witness stand, and his rights to call or confront witnesses. The record further demonstrates that defendant confirmed that no one had made any threats or promises to make him take the plea, that he had the benefit of his counsel's efforts and guidance, and that he voluntarily chose to forgo trial in favor of entering a guilty plea. Moreover, because nothing that defendant said or failed to say in his allocution negated any element of the offense to which he pleaded guilty or otherwise called into question his admitted guilt or the voluntariness of his plea, and the court established that defendant understood that he was pleading guilty to disorderly conduct, there is no basis provided by defendant on appeal to vacate the plea (see People v Seeber, 4 NY3d 780 [2005]). Therefore, while the plea allocution could have been more robust, the totality of the circumstances establishes a knowing, intelligent and voluntary plea (see People v Sosa, 28 NY3d 965, 966 [2016]; Conceicao, 26 NY3d at 384; Reinhardt, 2018 NY Slip Op 50111[U]).
Accordingly, the judgment of conviction is affirmed.
Adams, P.J., Tolbert and Garguilo, JJ., concur.