The People of the State of New York, Respondent, 
against
Mary Tardif, Defendant-Appellant.



In consolidated appeals, defendant appeals from (1) a judgment of the Criminal Court of the City of New York, New York County (Marc J. Whiten, J.), rendered November 26, 2012, convicting her, upon her plea of guilty, of disorderly conduct, and imposing sentence, and (2) a judgment (same court and Judge), rendered November 26, 2012, convicting her, upon her plea of guilty, of disorderly conduct, and imposing sentence.




Per Curiam.
Judgments of conviction (Marc J. Whiten, J.), each rendered November 26, 2012, affirmed.
Because defendant waived prosecution by information, the accusatory instruments at issue were only required to satisfy the reasonable cause requirement of a misdemeanor complaint (see People v Dumay, 23 NY3d 518, 522 [2014]).
So viewed, the accusatory instrument charging disorderly conduct under docket number 2012NY022062 was not jurisdictionally defective. Giving the instrument "a fair and not overly restrictive or technical reading" (People v Casey, 95 NY2d 354, 360 [2000]), we find "as a matter of common sense and reasonable pleading" (People v Davis, 13 NY3d 17, 31 [2009]) that the factual allegations were sufficient to charge defendant with congregating with other persons in a public place and refusing to comply with a lawful order of the police to disperse (see Penal Law § 240.20[6]). The factual part of the instrument consists of averments by the arresting officer setting forth the elements of the offense. It provides the date, time and location of the offense. It states that defendant committed the offense when she "congregated] in a group while standing on a public sidewalk and jumping up and down causing people to walk around the defendant an[d] into the street to pass by"; and that deponent observed another officer, Deputy Inspector Winski "give an order to disperse and that defendant remained in said area and refused to move on." These allegations constituted facts "supporting or tending to support the charges" (CPL 100.15 [3]), "provide[d] reasonable cause to believe that the defendant committed the offense ...." (CPL 100.40 [1][b]; see People v Carcel, 3 NY2d 327, 333 [1957]; People v Seck, 126 AD3d 574 [2015], lv denied 25 NY3d 1171 [2015]; People v Wilson, 53 Misc 3d 143[A], 2016 NY Slip Op 51553[U] [App Term, 1st Dept 2016]), and were sufficient for pleading purposes to enable defendant to prepare a defense and prevent her from being tried twice for the same offense (People v Kasse, 22 NY3d 1142, 1143 [2014]).
Nor was the accusatory instrument under docket number 2012NY056355 jurisdictionally defective. The factual part of the instrument consists of averments by the arresting officer setting forth the elements of the offense, as well as the date, time and location of the offense. It states that defendant committed the offense when she "s[at] on the ground in front of the revolving door at Goldman Sachs" with a separately charged defendant at 9:15 a.m., "blocking the normal flow of traffic" and causing "two or three people" to "exit the building through another door" and refusing to disperse when told to by the police. Based upon these allegations, a factfinder could infer that defendant's conduct in blocking a means of pedestrian ingress and egress to a commercial building during working hours, and continuing to do so after being ordered to move, posed a threat to public safety (see People v Baker, 20 NY3d 354, 359-360 [2013]) and recklessly created a substantial risk of "a potential or immediate public problem" (People v Weaver, 16 NY3d 123, 128 [2011], quoting People v Munafo, 50 NY2d 326, 331 [1980]).
Our dissenting colleague invokes the First Amendment to the State and Federal constitution as a basis to invalidate the accusatory instruments, asserting that defendant was engaged in politically motivated expression as part of the Occupy Wall Street movement on the occasion of each of her arrests. The position advanced by the dissent is unwarranted, since it relies upon facts outside the four corners of the accusatory instrument to assert a defense that defendant does not now raise. 
Critically, the accusatory instruments make no mention of Occupy Wall Street, nor do the factual portions of the instruments even infer that defendant was engaging in any type of protest activity. An accusatory instrument must be construed within its four corners (see People v Thomas, 4 NY3d 143, 146 [2005]; People v Alejandro, 70 NY3d 133 [1987]), and a court may not rely on external factors to create a jurisdictional defect not evident from the face of the pleading (see People v Konieczny, 2 NY3d 569, 576 [2004]). Thus, it is improper for the dissent to consider these unpleaded background facts in assessing the sufficiency of the accusatory instrument.
Moreover, defendant never so much as hinted much less claimed in her appellate brief that the accusatory instruments are jurisdictionally defective based upon First Amendment principles. It is of no moment that the issue was previously raised by defendant in a prior stage of the proceeding, specifically, in a memorandum of law submitted with her omnibus motion. Even assuming that this argument could be raised in a challenge to the facial sufficiency of the accusatory instruments, rather than as an evidentiary defense to the disorderly conduct charges (cf. People v Casey, 95 NY2d 354, 360 [2000]), defendant abandoned whatever argument she may have had on this issue by not raising it in her appellate brief (see People v Alexander, 19 NY3d 203, 211 [2012] ["[A] properly interposed constitutional claim may be deemed abandoned or waived if not pursued"]; People v Willey, 118 AD3d 1190, n [2014]["To the extent that defendant had previously asserted a constitutional claim, this would survive his guilty plea and appeal waiver; nonetheless, any such claim is deemed abandoned by his failure to raise it in his brief upon appeal"]; People v DiTommaso, 127 AD3d 11, 21 [2015], lv denied 25 NY3d 1162 [2015] [defendant abandoned argument relating to violation of Confrontation Clause by failing to address it in brief on appeal]; People v Jansen, 145 AD2d 870, 871 [1988], lv denied 73 NY2d 923 [1989] ["the failure to raise an issue in an appellate brief constitutes an abandonment of that issue"]; People v Purcelle, 282 AD2d 824, 825 [2001]). Thus, the dissent finds itself in the [*2]awkward position of advancing an argument abandoned by the appellant. "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them" (United States v Brocksmith, 991 F2d 1376, 1384 [7th Cir 1993], cert den 510 US 999 [1993]).
We do not address the rest of the dissent as our opinion adequately explains the bases for our conclusions and we do not regard the dissent as detracting from them.
I concur I concur I concur
Hon. Doris Ling-Cohan
Dissenting Opinion
I respectfully dissent and vote to dismiss the accusatory instruments and to vacate defendant's convictions. Defendant appeals from two separate judgments of disorderly conduct (PL 240.20), upon pleas of guilty, arising out of two incidents. While I agree with the majoritythat the accusatoryinstruments must be treated as misdemeanor complaints, Ifind that both are facially insufficient and implicate protected First Amendment rights.
The majority correctly concludes that defendant waived prosecution by information on both judgments. In view of defendant's waiver of her right to prosecution by information, "the standard applicable to [her] challenge to the accusatory instrument is that of a misdemeanor complaint" (People v Aragon, 28 NY3d 125, 127 [2016], citing CPL 170.65 [3]; People v Dumay, 23 NY3d 518, 524 [2014]; People v Williams, 54 Misc 3d 133[A] [App Term, 1st Dept 2017]). A misdemeanor complaint must allege "facts of an evidentiary character supporting or tending to support the charges" (CPL 100.15 [3]; CPL 100.40 [4] [a]; see People v Dreyden, 15 NY3d 100, 102-103 [2010]) and "providereasonable causeto believe that the defendant committed the offense charged" (CPL 100.40 [4] [b]; see People v Dumas, 68 NY2d 729, 731 [1986]; People v Afilal, 26 NY3d 1050, 1052 [2015], revg 43 Misc 3d 142(A) [App Term, 1st Dept 2014]). Reasonable cause "exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it" (CPL 70.10 [2]).[FN1]


Additionally, courts have held that if the factual allegations of an accusatory instrument give " an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly technical reading" (PeoplevCasey, 95NY2d 354, 360 [2000]). Whilethe test forfacial sufficiency [*3]has also been articulated as "whether the accusatory instrument failed to supply defendant with sufficient notice of the charged crime to satisfy the demands of due process and double jeopardy" (People v. Aragon, 28 NY3d at 128, citing People v Dreyden, 15 NY3d at 103), the statutory reasonable cause standard of CPL 100.40 (4) (b) has never been negated (see e.g. People v Afilal, 26 NY3d 1050 [2015]; People v Dumas, 68 NY2d 729, 731 [1986]).
1. First Amendment

Critically, the circumstances in this case reflect the exercise of basic protected constitutional freedoms. It is uncontested that defendant herein was engaging in politically motivated expression on a public sidewalk. Notwithstanding the majority's characterization, it is undisputed that the People conceded in its appellate brief that, "[t]he date of the occurrence was the sixth month anniversary of the Occupy Wall Street Movement and the location was in the immediate vicinity of Zuccotti Park, which served as a base of the movement's operations" (brief for the People-respondents at 1-2, citing record on appeal; see also defendant's Notice of Motion, Docket No. 2012NY022062 at 2, ¶ 6 [discussing Occupy Wall Street]).

At the outset, it is noted that defendant clearly argued and presented to this court the contention that the accusatory instruments at issue are jurisdictionally insufficient based on First Amendment protections. Both the defendant and the People cite, in their appellate briefs, to multiple cases involving the unavoidable interplay between freedom of speech and disorderly conduct charges (see e.g. People v Pearl, 66 Misc 2d 502 [App Term, 1st Dept 1971]). Even at the trial court, both sides addressed the First Amendment. Defense counsel submitted a 48-page Memorandum of Law devoted to constitutional arguments, 11 pages of which fall under the heading "First Amendment Principles" (see Oliver Memorandum of Law in Support of Defendant's Omnibus Motion at 9-20). The People had a full opportunity to respond to such arguments in its response (see Mirani Affirmation in Response to the Defendant's Omnibus Motion). The First Amendment argument as to the sufficiency of the accusatory instruments was clearly asserted by the defense, thoroughly refuted by the People, and reviewed by the trial court.

To suggest, as the majority has done, that the First Amendment issues herein should not be considered by this court is an antinome. Notably, the majority fails to cite any case in which an appellate court held that it was barred from reviewing fundamental constitutional issues as abandoned. Notably, the cases cited by the majority highlight that it lies within the discretion of this court to choose to deem an argument as abandoned if not pursued on appeal. Stated otherwise, neither the legislaturenor the common law mandate that this court deem an argument as abandoned (see e.g., People v Alexander, 19 NY3d 203, 211 [2012] ["[A] properly interposed constitutional claim may be deemed abandoned or waived if not pursued" (emphasis added)]).[FN2]


Even assuming, arguendo, that the defendant abandoned her First Amendment arguments on appeal, this court is not precluded from reviewing such arguments. "Upon an appeal to an intermediate appellate court from a judgment, sentence or order of a criminal court, such intermediate appellate court may consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant" (CPL 470.15 [1] [emphasis added]). Furthermore, as noted by the Court of Appeals, "procedural rules should be so designed as to keep unjust results to a minimum" (People v Finch, 23 NY3d 408, 416 [2014]). Defyingthe Court of Appeals' sound rationale, when the issues involve important constitutional rights, which were asserted and refuted in opposition and are clear on the face of the record, should not be permitted.

Turning to the merits of the arguments, in affirming defendant's disorderly conduct convictions, the majorityis authorizing an impermissible infringement of defendant's fundamental rights (US Const First Amend; see also NY Const, art I, § 8). Historically public fora, including sidewalks, are held in trust for the public to communicate their views on national questions such as those presented here (Hague v Committee for Indus. Org., 307 US 496, 516 [*4][*5][*6][*7][*8][*9][*10][1939]).[FN3]
Furthermore, "[t]he Supreme Court has declared that the First Amendment protects political demonstrations and protests—activities at the heart of what the Bill of Rights was designed to safeguard...Indeed, the Court has repeatedly held that police may not interfere with orderly, nonviolent protests merely because they simply fear possible disorder" ( Jones v Parmley, 465 F3d 46, 56 [2d Cir 2006] [citations omitted]).

As stated in the McKinney Practice Commentaries PL 240.20: "The disorderly conduct' statute was designed to proscribe only that type of conduct which has a real tendency to promote public disorder.' Requiring at least a risk of pubic disorder or harm tends to assure t hat the statute does not violate the First Amendment's freedom of speech clause" (McKinney's Cons Laws of NY, Book 39, PL 240.20 at 32 [2017 ed] [internal citations omitted]). Of course, First Amendment rights are not absolute (People v Dupont, 107 AD2d 247, 254 [1st Dept 1985]). Certain categories of speech are not protected by the First Amendment [FN4]
and, in the interest of public order, the legislature may "...regulate by reasonable, appropriate and nondiscriminatory measures the time, place and manner of use of the streets for public assemblies" without unconstitutionally infringing free speech rights (People v Pearl, 66 Misc 2d 502 [App Term, 1st Department 1971], citing Cox v Louisiana, 39 US 536, 554-558 [1965]).

Significantly, here, it is not alleged that defendant has engaged in any unprotected speech, nor threatened public order, nor caused anypublic harm requiring regulation. Even at this pleading stage inquiry, defendant does not lose her right to free speech, protected by both the Federal and State Constitutions. Simply because the defendant could have asserted her constitutional protections as a trial defense, as claimed by the majority, does not foreclose her from arguing that the accusatory instruments were jurisdictionally defective based on the constitutional infirmities outlined above. Rather, affirming defendant's convictions improperly suppresses a fundamental right "under [the] guise of preserving order" (People v Turner, 48 Misc 2d 611, 633 [App Term, 1st Dept 1965, Hofstadter, J., dissenting]).

The complaints involved in this case fail to plead anything more than that defendant had been engaging in lawful expression of her constitutional rights, which are "at the heart of what the Bill of Rights was designed to safeguard" (Jones v Parmley, 465 F3d 46, 56 [2d Cir 2006]). Further, defendant cannot lawfully be deprived of these fundamental rights based on a dispersal order that is, itself, violative of the constitution (see generally People v Losinger, 63 Misc 2d 577 [Rochester CityCt, 1970] [holding that arrest of defendants for disorderly conduct (PL 240.20 [6]) violated their constitutional rights under the First Amendment, and defendants permissiblyrefused to comply with police orders to disperse]; see also Wright v Georgia, 373 US 284, 292 [1963]). Ultimately, the charges upon which defendant was convicted infringe upon her fundamental First Amendment rights, and the complaints at issue must therefore be dismissed.
2. Docket Number 2012NY056355 — July 20, 2012 — Sitting on the Ground

Furthermore, regardless of First Amendment concerns, the misdemeanor complaints herein are clearly jurisdictionally insufficient on their face (see People v Dreyden, 15 NY3d 100 [2010], revg23 Misc 3d 34 [2d Dept 2009]). Under docket number2012NY056355, defendant was accused of committing a violation of disorderly conduct pursuant to PL 240.20 (5). The accusatory instrument alleges that at 9:15 a.m. on July 20, 2012, defendant was "sitting on the ground in front of a revolving door at Goldman Sachs [and blocking] the normal flow of pedestrian traffic, in that approximately two to three people had to exit the building through another door, therebydisrupting the normal flow of traffic" (emphasis supplied).

a. Disorderly Conduct (PL 240.20 [5]) — Obstructing Pedestrian Traffic

A person is guilty of disorderly conduct pursuant to PL 240.20 (5) when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof [s]he obstructs vehicular or pedestrian traffic." "The clear aim [of the disorderly conduct statute] was to reserve [such] statute for situations that carried beyond the concern of individual disputants to a point where they had become a potential or immediate public problem" (People v Munafo, 50 NY2d 326, 331 [1980]; People v Baker, 20 NY3d 354, 359-360 [2013]). When determining whether an act is a potential or immediate public problem (also known as the public harm element), a court must consider "the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance, and, if so, the nature and number of those attracted; and any other relevant circumstances" (People v Weaver, 16 NY3d 123, 128 [2011]).

Significantly, as the Court of Appeals has made abundantly clear, "[s]omething more than a mere inconveniencing of pedestrians is required to support thecharge[of PL240.20 (5)]"(People v Jones, 9 NY3d 259, 262 [2007] [emphasis added]). New York courts have consistently held that a disorderly conduct conviction pursuant to CPL 240.20 (5) cannot stand, where a defendant simply blocked pedestrians' right of way (id. [dismissing information and vacating disorderly conduct conviction where defendant stood on public sidewalk with a group and caused numerous pedestrians to walk around defendant]; People v Carcel, 3 NY2d 327, 332 [1957] [dismissing complaint and reversing disorderly conduct convictions where defendant leafletted in front of the United Nations building and blocked pedestrians' right of way]; People v Nixon, 248 NY 182 [1928] [reversing disorderly conduct conviction where defendant paraded on a public sidewalk four abreast, gathered with approximately 120 people, obstructing pedestrian traffic and causing some pedestrians to walk in the roadway]; People v Pearl, 66 Misc 2d 502, 502-503 [App Term, 1st Dept 1971] [dismissing complaint and reversing disorderly conduct convictions pursuant to PL 240.20 (5) where defendants merely temporarily inconvenienced pedestrians]).

Here, the accusatory instrument under docket number 2012NY056355 fails to allege enough facts to provide reasonable cause that defendant "inten[ded] to cause publicinconvenience, annoyance or alarm, or recklessly creat[ed] a risk thereof" (PL 240.20 [5])[FN5]
by "obstruct[ing] vehicular or pedestrian traffic" (id.), because the complaint makes clear that defendant did not cause "more than a mere inconveniencing of pedestrians" (People v Jones, 9 NY3d 259, 262 [2007]), specifically, only two to three people.

Furthermore, using the multifactored test set forth in People v Weaver, 16 NY3d 123, 128 (2011), the complaint is insufficient to support the public harm element. As stated previously, the complaint alleges minimal facts showing no more than a mere temporary inconvenience to only "two to three" pedestrians, who "had to exit the building through another door" (Complaint, Docket No. 2012NY056355). Significantly, conceded in the complaint is that these "two or three" pedestrians were, nonetheless, able to exit the building. Although the subject events took place in the morning, in front of an office building, there are no allegations that defendant's conduct was anything but peaceable, or that the door blocked was the sole door to the building; nor are there any allegations that she engaged in threatening or abusive behavior. Further, the complaint does not assert that any pedestrians were drawn to the location of the arrest. Notably, the complaint even states that the building had an alternate form of ingress and egress, which the two to three allegedly temporarily inconvenienced people, in fact used. Thus, the complaint fails to provide the requisite reasonable cause that defendant's actions recklessly posed a threat to public safety, or a potential, or immediate public problem (People v Munafo, 50 NY2d 326, 331 [1980]; People v Baker, 20 NY3d 354, 359 [2013]).

Accordingly, the allegations in the complaint fall squarely under the long line of Court of Appeals cases holding that a mere inconveniencing of pedestrians cannot, alone, support a disorderly conduct charge (People v Jones, 9 NY3d 259, 262 [2007]; People v Carcel, 3 NY2d 327, 332 [1957]; People v Nixon, 248 NY 182 [1928]; see also People v Pearl, 66 Misc 2d 502, 502-503 [App Term, 1st Dept 1971]). The few cases cited by the majority are distinguishable or support dismissal. In fact, People v Baker, 20 NY3d 354 (2013), dismissed an indictment for disorderly conduct, due to insufficient proof adduced at a suppression hearing as to potential or immediate public harm caused by defendant's actions. Similarly, People v Munafo, 50 NY2d 326, 331 (1980), also cited by the majority, reversed defendant's disorderly conduct conviction and dismissed the accusatory instrument, because it did not sufficiently allege public harm for a conviction under PL 240.20 (5). Lastly, People v Weaver, 16 NY3d 123 (2011), although upholding the disorderly conduct conviction, deals with PL 240.20 (3), which was not charged in the complaint here. Furthermore, the Weaver court specifically noted that the commotion at issue, during which defendant groom screamed obscenities at his new bride and became very aggressive and threatening, while both were still dressed in their wedding attire, occurred in a small village where outbursts of such a nature were out of the ordinary. In the case at bar, the complaint stated no threatening or abusive actions by defendant, and the arrest took place on a street in front of a commercial building, in Manhattan, where navigating around pedestrian traffic is commonplace. Moreover, none of the cases cited by the majority sustain a disorderly conduct charge, when only "two to three" people were temporarily inconvenienced, by having to use a nearby door to exit. Given the absence of factual allegations pleading anything more than the temporary inconveniencing of "two or three people" and the utter failure to plead the public harm element of the disorderly conduct charge, the first complaint at issue fails to meet the reasonable cause requirement and should therefore be dismissed as facially deficient (People v Afilal, 26 NY3d 1050 [2015]).
3. Docket Number 2012NY022062 — March 17, 2012 — Standing on Sidewalk and Failing to Leave

Under docket number 2012NY022062, defendant was accused of committing violations of disorderly conduct (PL 240.20 [5] and [6]) and the crime of resisting arrest (PL 205.30). The complaint alleges that at 2:25 p.m. on March 17, 2012:

[D]eponent [Police Officer Kendal Creer] observed the defendant obstructing pedestrian traffic as follows: deponent observed defendant congregationing [sic] with a group while standing on a public sidewalk and jumping up and down thereby causing people to walk around the defendant an [sic] into the street to pass by. Defendant's conduct created a public disturbance and inconvenience in that it caused disruption of the normal flow of traffic and people to express alarm. Deponent states that deponent observed Deputy Inspector Edward Winski give an order to disperse and that defendant remained in said area and refused to move on.
a. Disorderly Conduct (PL 240.20 [5]) — Obstructing Pedestrian Traffic

The PL 240.20 (5) charge on the subject docket is insufficient, because no facts in the complaint show that a risk of disorder did or could result from defendant's conduct, beyond a merepedestrian inconvenience (People v Jones, 9 NY3d 259, 262 [2007]). The complaint only states that defendant's conduct "caused disruption of the normal flow of [pedestrian] traffic and people to express alarm," which is patently insufficient (id.). The majority, however, declines to review the inadequacy of that charge on the basis that " a judgment of conviction for disorderly conduct will be affirmed if the evidence establishes a violation of any of the subdivisions of the disorderly conduct statute" (People v Todaro, 26 NY2d 325, 330 [1970], citing People v Carcel, 2 NY2d 327, 331 [1957]). As such, to affirm defendant's disorderly conduct conviction, the majorityrelies solely on the alleged sufficiency of the charge pursuant to PL 240.20 (6).

b. Disorderly Conduct (PL 240.20 [6]) — Refusal to Comply with a "Lawful Order" to Disperse

A person is guilty of disorderly conduct pursuant to PL 240.20 (6) when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof [s]he congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse" (emphasis added). Evidence of actual or threatened public harm and a lawful police order are necessary elements of a valid disorderly conduct charge, pursuant to PL 240.20 (6) (People v Johnson, 22 NY3d 1162, 1164 [2014], revg 99 AD3d 472 [2012] [citations omitted]; see People v Edmond, 17 Misc 3d 1130[A] [Sup Ct, Queens County 2007] [finding that just refusing to comply with a police order is insufficient proof of violation of PL 240.20 (6)]; citing People v Arko, 199 NY Crim Rep 149 [App Term, 2d Dept 1922]). A police officer's order to disperse is lawful if it is reasonable and calculated to promote public order (People v Galpern, 259 NY 279, 284-285 [1932]), and a police officer may issue a lawful order if a congregation presents the "possibility of disorder" (People v Nixon, 248 NY 182, 188-189 [1928]). However, it is axiomatic that " one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution" (Wright v Georgia, 373 US 284, 292 [1963]).

Comparing the language of the accusatory instrument with the jurisdictional requirements of a misdemeanor complaint highlights its deficiencies. "A valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution" (People v Dreyden, 15 NY3d 100, 103 [2010] [citations omitted]). As discussed supra, a misdemeanor complaint is sufficient on its face when it "alleges facts of an evidentiary nature tending to support the charges" (CPL 100.15 [3]; CPL 100.40 [4] [a]) and "provide[s] reasonable cause to believe the defendant committed the offense charged" (CPL 100.40 [4] [b]). An arresting officer's allegations must provide sufficient detail of the criminal conduct, because conclusory statements do not, on their own, satisfy the reasonable cause requirement (People v Dreyden, 15 NY3d 100, 104 [2010]; People v Dumas, 68 NY2d 729, 731 [1986]; People v Afilal, 26 NY3d 1050, 1052 [2015]).

Therefore, a complaint must include the underlying facts of an evidentiary character in sufficient detail (rather than mere conclusory statements), that provide reasonable cause to believe that the police officer's order was "lawful," as required by PL 240.20 (6) (see e.g. People v Afilal, 26 NY3d 1050 [2015], revg 43 Misc 3d 142(A) [App Term, 1st Dept 2014] [misdemeanor complaint dismissed where accusatory instrument relied on conclusory statements, thereby failing to meet reasonable cause requirement as to "public place" element of PL 221.10 (1)]; People v Dreyden, 15 NY3d 100 [2010], revg 23 Misc 3d 34 [App Term, 2d, 11th & 13th Jud Dists 2009] [misdemeanor complaint dismissed, because it contained no factual basis for the deponent's conclusion that the defendant's knife was a "gravity knife" as required by PL 265.01 (1)]; People v Dumas, 68 NY2d 729, 731 [1986] [reversing Appellate Term and dismissing misdemeanor complaint, because it merely contained conclusory statements, without evidentiary support, that the substance at issue was marihuana, as proscribed by the charged crime]).

Here, reviewing the accusatory instrument in the least restrictive manner reveals that the complaint is insufficient to support a disorderly conduct charge pursuant to PL 240.20 (6), as it contains conclusory statements rather than the required detailed facts of an evidentiary character providing reasonable cause that the police officer's order was lawful (see e.g. People v Afilal, 26 NY3d 1050 [2015], revg 43 Misc 3d 142(A) [App Term, 1st Dept 2014]). The allegation that deponent observed a Deputy Inspector "give an order to disperse" and that "defendant remained in said area and refused to move on" is, without more, insufficient to provide reasonable cause to believe that the order to disperse was "lawful." The complaint does not allege sufficient facts to provide reasonable cause that Deputy Inspector Edward Winski "sense[d] the possibility of disorder"(People vNixon, 248 NY182, 189 [1928]). Rather, the complaint impermissiblyassumes the validity of the order to disperse, neglecting to even use the words "lawful order" anywhere in the factual part, and fails to provide sufficient reliable facts for the court to determine that the order was "lawful", or to demonstrate that defendant was permitted the requisite opportunity to disperse without being arrested (see City of Chicago v Morales, 527 US 41, 58 [1999]; Jones v Parmley, 465 F3d 46, 60 [2d Cir 2006]; Dellums v Powell, 566 F2d 167, 181 n 31 [DC Cir 1977]).

The complaint merely and insufficiently alleges, in a conclusory manner, that defendant congregated in a "group" (supplying no facts as to the size of the "group" and without indicating how the police officer determined that she was part of the group), that she jumped up and down (without specifying an amount of time), causing an unspecified number of people to walk into the street, and that such "conduct created a public disturbance and inconvenience in that it caused disruption of the normal flow of [pedestrian] traffic and people to express alarm," without any details or actual support as to what may have caused the officer to have concluded this. While the complaint attempts to satisfy the public harm element by relying on conclusory statements that do no more than track the language of the statute, by using the word "alarm," such is insufficient to establish reasonable cause (see People v Afilal, 26 NY3d 1050 [2015]; see also People v Dreyden, 15 NY3d 100, 103-104 [2010]; People v Dumas, 68 NY2d 729 [1986]). Nor were the number of people who were allegedly "express[ing] alarm" even approximated in the complaint; nor did the complaint include what was communicated, to infer that some unspecified amount of people were in fact "alarmed". For example, pedestrians complaining about being temporarily inconvenienced would plainly be insufficient for a disorderly conduct conviction, as important constitutional First Amendment rights are at issue (see generally Jones v Parmley, 465 F3d 46, 56 [2d Cir 2006]). Furthermore, the complaint fails to specify the amount of time that had passed after Deputy Inspector Winski ordered defendant to disperse, so any factual support, that she had a reasonable opportunity to disperse, was lacking. Affirming a disorderly conduct conviction on these conclusory allegations ultimately gives unfettered discretion to police officers to arrest citizens, without requiring that police officers provide a reliable, factual basis, as to why they "sensed the possibility of disorder" (see People v Nixon, 248 NY 182, 189 [1928]). Such a delegation of unfettered discretion is in contravention of the reasonable cause requirement (CPL 100.40 [4]) and would infringe upon important First Amendment rights.

The few cases cited by the majority are inapposite. The decision in People v Carcel, 3 NY2d 327, 333 (1957) reverses defendant's disorderly conduct conviction and held that defendant was not "congregating with others," which was not at issue here. In People v Seck, 126 AD3d 574 (1st Dept 2015), lv denied 25 NY3dd 1171 (2015), decided after trial, defendant "repeatedly refused" to disperse, indicating that, unlike in the instant matter, the police officer in Seck had given multiple warnings regarding potential arrest, as well as sufficient time to comply with the dispersal order. Additionally, the defendant's behavior in Seck was clearly more aggressive and breached the peace; defendant in that case pushed the police officer after being told to disperse, began yelling, and grabbed the officer's pepper spray and radio (Seck, 126 AD3d at 574). Similarly, in People v Wilson, 53 Misc 3d 143(A) (1st Dept 2016), the police officer asked the defendant to move away from the area numerous times, and the defendant subsequently cursed at and lunged towards the officer. Unlike in Seck and Wilson, the complaint herein did not allege that defendant was abusive or used offensive language towards the arresting officer, thereby failing to allege reasonable cause that defendant committed a violation of PL 240.20 (6).

c. Resisting Arrest (PL 205.30)

The final charge on docket number 2012NY022062 is resisting arrest (PL 205.30). "A person is guilty of resisting arrest when [s]he intentionally prevents or attempts to prevent a police officer or a peace officer from effecting an authorized arrest of [her]self or another person" (PL 205.30 [emphasis added]). As the complaint failed to allege sufficient facts to support the underlyingdisorderlyconduct charge, the facts cannot be deemed sufficient to allege that the arrest was "authorized" as required by PL 205.30 (People v Jones, 9 NY3d 259, 263 [2007]).
4. Conclusion

In sum, (1) the subject complaints do not provide reasonable cause that defendant violated PL 240.20 (5), PL 240.20 (6) or PL 205.30, respectively, and (2) defendant's arrest and conviction on these charges infringe upon her fundamental First Amendment rights. As courts are charged with safeguarding the constitutional rights of New York's citizens (Hernandez v Robles, 7 NY3d 338, 396 [2006, Kaye, Ch. J., dissenting], abrogated by Obergefell v Hodges, 135 S Ct 2584 [2015]), I would reverse the Criminal Court's order and dismiss the accusatory instruments as jurisdictionallydefective (People v Afilal, 26 NY3d 1050 [2015]; People v Dreyden, 15 NY3d 100 [2010]). Forcing a defendant to undergo a criminal prosecution on the conclusory allegations in the complaints at issue, which on their face establish the valid exercise of her First Amendment rights, violates the Constitution and, in essence, punishes defendant for the valid exercise of her fundamental rights.

THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

Decision Date: November 13, 2017



Footnotes

Footnote 1:It has been observed that "the reasonable cause provision of NY C.P.L. § 100.40(4)(b) requires that the accusatory instrument provide a prima facie case" (Stinson v City of New York, 2012 WL 2952840, *8, 2012 US Dist LEXIS 100634, *20-21 [SD NY, July 18, 2012, No. 10 Civ 4228 [RWS]). Stinson distinguishes the prima facie requirement for an information, which entails that an information must establish all elements of a crime by non-hearsay allegations, from the reasonable cause requirement of a misdemeanor complaint, which requires that a complaint must still set forth all elements, but may use hearsay to so do (id.).

Footnote 2:The cases the majority does cite support this notion. In People v Alexander, 19 NY3d 203 (2012), the issue was whether the defendant's plea was coerced by the court, where the trial court conditioned the plea on defendant's withdrawal of his pending speedy trial claim, whereas the case herein plainly does not involve such issue, and the trial court here reviewed and decided defendant's First Amendment arguments. Thus, while the Alexander court noted in dicta that the denial of a decided speedy trial claim "may" be deemed abandoned if not pursued (People v Alexander, 19 NY3d 203, 211 [2012]), such commentary does not bind this court to deem an argument to be abandoned where, as here, both defendant and the People advanced the constitutional arguments at issue at trial and on appeal. Next, in People v Willey, 118 AD3d 1190 (3d Dept 2014), the court held that defendant's statutory speedy trial claim was precluded absent a challenge to the voluntariness of the defendant's plea or his waiver of his right to appeal. The Willey court merely mentioned in a footnote that it chose to deemas abandoned whollyunbriefed constitutional speedy trial claims (Willey, 118 AD3d 1190 at n). Here, no similar procedural impediment prevents this court from reviewing the constitutional arguments made by the parties on appeal. In People v DiTommaso, 127 AD3d 11 (2015), lv denied 25 NY3d 1162 (2015), the court refused to review arguments not made by the parties at trial or in their briefs. Nonetheless, Justice Tom aptly noted in concurrence that the court has the duty to take judicial notice, without request of the parties, of laws pertaining to matters necessary to the disposition of appeal (People v DiTommaso, 127 AD3d 11 [2015], lv denied 25 NY3d 1162, [2015, Tom, J. concurring], citing CPLR 4511 [a] ["Everycourt shall take judicial notice without request of the common law, constitutions and public statutes of the United States "] ). Further, as noted above, unlike in DiTommaso, the parties here asserted First Amendment arguments on appeal and at the trial level. In People v Jansen, 145 AD2d 870, 871 (1988), lv denied 73 NY2d 923 (1989), the court assessed its authority to review an argument raised by the defendant for the first time in a post-appellate argument letter to the court. As outlined above, defendant herein raised her arguments both on appeal and extensively at the trial level. Additionally, the instant case implicates defendant's fundamental constitutional rights, unlike in Jansen, which merely involved calculating the value of stolen property. Lastly, in People v Purcelle, 282 AD2d 824, 825 (2001), the defendant appealed from both a verdict following a jury trial and from a separate guilty plea, but the defendant failed to raise any issues at all in his appellate brief pertaining to the guilty plea. Thus, the Purcelle court subsequently deemed abandoned that aspect of his appeal relating only to the guilty plea. In the case at bar, defendant fully briefed the issues relating to the sufficiency of the accusatory instrument, citing cases involving First Amendment issues throughout.

Footnote 3:"Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens" (Hague v Committee for Indus. Org., 307 US 496, 515 [1939]).

Footnote 4:Examples include speech inciting a riot (Feiner v New York, 340 US 315 [1951]), uttering "fighting words" (Chaplinsky v New Hampshire, 315 US 568 [1942]), and creating a clear and present danger of disorder or other threat to public safety (Cantwell v Connecticut, 310 US 296 [1940]).

Footnote 5:This court need not review whether defendant had the requisite mens rea to commit the violation of disorderly conduct (PL 240.20 [5]), because the complaint did not sufficiently allege the public harm element.