Matter of Derek KK. v Jennifer KK. (2021 NY Slip Op 04169)





Matter of Derek KK. v Jennifer KK.


2021 NY Slip Op 04169


Decided on July 1, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 1, 2021

530668
[*1]In the Matter of Derek KK., Appellant,
v
Jennifer KK., Respondent. (And Other Related Proceedings.)

Calendar Date:May 27, 2021

Before:Garry, P.J., Lynch, Clark, Aarons and Colangelo, JJ.

Michelle I. Rosien, Philmont, for appellant.
Monica M. Kenny-Keff, Cairo, attorney for the children.



Garry, P.J.
Appeal from an order of the Family Court of Greene County (Tailleur, J.), entered October 29, 2019, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of two children (born in 2013 and 2016). An October 15, 2018 custody order, entered upon the parties' consent, provided for joint legal custody of the subject children, primary physical custody to the mother and parenting time to the father at times as agreed upon by the parties. An order of protection issued the same day, also on consent and to resolve a family offense petition filed by the mother, required the father to refrain from committing any family offenses against the mother and stipulated that his failure to leave the premises of the marital home — where the parties and children resided — when requested by the mother would be deemed per se harassment and a violation of the order.
On January 8, 2019, the father filed petitions seeking to modify both October 2018 orders. That same day, the mother filed a family offense petition seeking to modify the order of protection to an immediate stay-away order that would prohibit the father from being in the home and only allow for supervised parenting time. Family Court immediately granted an ex parte temporary stay-away order in favor of the mother, but did not prohibit the father's unsupervised contact with the children. Months later, the mother filed a petition seeking modification of the October 2018 custody order, seeking sole legal and physical custody and a requirement of supervision for the father's parenting time. During the pendency of these proceedings, the parties filed new and amended petitions and the court issued numerous temporary orders that, alternately, set specific parenting time for the father or required or relieved the requirement of supervision of his parenting time.
Following a hearing, Family Court granted the mother sole legal and primary physical custody and ordered that the father have, at a minimum, three hours of supervised weekly parenting time. The court further ordered, among other things, that the father continue counseling, the mother enroll in counseling, and that the father's enrollment in a parenting program be a condition precedent for him to seek modification of the visitation part of the order. With respect to the family offense, Family Court found that the mother met her burden of proving the allegations of harassment and stalking. Accordingly, the court issued a two-year stay-away order of protection against the father in favor of the mother, with exceptions for contact related to the new custody order. The father appeals.
As briefly summarized above, this appeal occurs against a backdrop of numerous petitions and modifications — and it bears specifically noting that the parties have [*2]continued litigating during the pendency of the appeal, and that their circumstances and custody engagement have apparently been significantly changed. The attorney for the children advises that there have been several modification petitions and temporary orders in the interim, and urges that we find the appeal moot on this basis. We decline this request due to the nonpermanent nature of such orders and the possibility that they will be vacated if the petitions are dismissed; a fact-finding hearing on those new petitions has not yet occurred (compare Matter of Little v Little, 107 AD3d 1065, 1066 [2013]). As always, however, our decision is limited to review of the facts and findings within the record before us, despite our recognition that the family's circumstances have since changed.
"A party seeking a modification of a prior order of custody must demonstrate that there has been a change in circumstances since entry of the prior order to warrant an analysis as to whether modification thereof would serve the best interests of the children" (Matter of Antonio MM. v Tara NN., 191 AD3d 1196, 1197 [2021] [citation omitted]). Only after this threshold hurdle has been met will the court conduct a best interests analysis. "As relevant here, Family Court may properly order supervised visitation if it finds that unsupervised visitation would be detrimental to the children's safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly" (Matter of Sandra R. v Matthew R., 189 AD3d 1995, 1997 [2020] [internal quotation marks and citations omitted], lv dismissed and denied 36 NY3d 1077 [2021]). "This Court accords great deference to Family Court's factual findings and credibility determinations given its superior position to observe and assess the witnesses' testimony and demeanor firsthand, and will not disturb its custodial determination," including whether parenting time should be supervised, "if supported by a sound and substantial basis in the record" (Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1167 [2020] [internal quotation marks, brackets and citations omitted]; see Matter of Lynn X. v Donald X., 162 AD3d 1276, 1277 [2018]).
Family Court issued a lengthy decision with specific factual findings, including finding that most of the mother's testimony was credible. Considering those determinations, which we will not disturb, the mother established a change in circumstances with proof that, among other things, the father discussed court proceedings with the children and harassed the mother by interfering with her ability to heat the home, calling the police to conduct multiple welfare checks during late hours and parking his car nearby to watch her or the home. The prior order, which provided for parenting time to the father as the parties agreed, had become unworkable because the parties could not reach any agreement.
Turning to the best interests analysis, and again accepting Family [*3]Court's credibility determinations and factual findings, the record contains a sound and substantial basis for the court's determination granting the mother sole legal and primary physical custody. The parties communicate only through Talking Parents, a cell phone application, as an order of protection forbids other direct communication, rendering joint custody impractical. The father did not have a permanent home and was staying on friends' couches, in residences where he did not even feel that he could bring the children for visits, rendering him incapable of having primary physical custody. The record contains evidence that the father used the children to pass messages to the mother and directed at least one of them to make false statements regarding abuse by the mother. The court found that, while the father loves his children, he was "struggl[ing] with the end of his marriage and has engaged in a course of harassing behavior" and, therefore, "his decision making creates a tangible risk of emotional harm to the children." Accordingly, the record supports the court's determination that the father's time with the children should be supervised.
Although the minimum amount of weekly parenting time afforded to the father was quite limited, Family Court ordered that he could have additional time if he paid an agency to provide the supervision. The court indicated that the father, who was 30 years old and not disabled, could work, even though he had difficulty finding employment due to a criminal conviction and lack of education. The court also ordered that, following 12 hours of supervised visitation, the father could petition for modification of the supervision requirement, and that, "[a]s a condition precedent to attempting to establish a change in circumstances upon which to lift the supervision portion of this [o]rder, the [f]ather shall be enrolled in an accredited parenting program." Despite the potential benefits of enrollment in a parenting program, the court erred in making such enrollment a condition precedent to establishing a change in circumstances to lift the supervision component (see Matter of Allen v Boswell, 149 AD3d 1528, 1529-1530 [2017], lv denied 30 NY3d 902 [2017]). We therefore modify the order by vacating the requirement that the father enroll in a parenting program as a prerequisite for a future application to modify his parenting time and instead insert a requirement that he comply with that term as a component of supervised visitation (see Matter of Ordona v Cothern, 126 AD3d 1544, 1546 [2015]; see also Matter of Thurarajah v Manjula, 184 AD3d 1130, 1131-1132 [2020]; Matter of Sanchez v Alvarez, 151 AD3d 1869, 1870 [2017]). We will not otherwise disturb the ordered supervised parenting time, despite the limited time provided, specifically noting and based upon the other provisions in the order permitting an increase in time and potential for swift modification.
Next, "although a Lincoln hearing indeed is the [*4]preferred method for ascertaining [the children's] wishes, such a hearing is not mandatory" (Matter of Leary v McGowan, 143 AD3d 1100, 1103 [2016]; see Matter of Edwin Z. v Courtney AA., 187 AD3d 1352, 1354 [2020]). "The determination of whether to hold a Lincoln hearing lies within Family Court's discretion and such a hearing will not be conducted if it will have a potential negative impact on the child[ren]" (Matter of Brandon E. v Kim E., 167 AD3d 1293, 1295 [2018] [internal quotation marks and citations omitted]; see Matter of Lorimer v Lorimer, 167 AD3d 1263, 1265 [2018], appeal dismissed and lv denied 33 NY3d 1040 [2019]; Matter of Merwin v Merwin, 138 AD3d 1193, 1195 [2016]). The father requested a Lincoln hearing, the mother opposed and the attorney for the children noted that she would advocate for their position on the merits but took no position on the hearing request. Family Court denied the request based on the children's young ages (three and six), with the attendant difficulties in obtaining helpful information, as well as the surrounding circumstances. Those circumstances included possible coaching of the children, the contentious nature of the parties' relationship and that the children had been interviewed by child protective workers several times after unfounded reports were made against the mother. Under the circumstances, we do not find that the court abused its discretion in declining to hold a Lincoln hearing (see Matter of Mary Ellen H. v Joseph H., 193 AD3d 1275, 1276-1277 [2021]; Matter of Brandon E. v Kim E., 167 AD3d at 1295; compare Matter of Edwin Z. v Courtney AA., 187 AD3d at 1354; Matter of Jessica B. v Robert B., 104 AD3d 1077, 1078 [2013]).
The father next argues that Family Court erred in granting the mother a stay-away order of protection. "In a family offense proceeding, the petitioner has the burden of establishing by a fair preponderance of the evidence that the respondent committed one of a number of specified offenses" (Matter of Putnam v Jenney, 168 AD3d 1155, 1156 [2019] [citation omitted]; see Family Ct Act § 821 [1] [a]; Matter of Allen v Emery, 187 AD3d 1339, 1339 [2020]). "Whether a family offense has been committed is a factual issue to be resolved by Family Court, and its determinations regarding the credibility of witnesses are entitled to great weight on appeal" (Matter of Putnam v Jenney, 168 AD3d at 1156 [internal quotation marks and citations omitted]; see Matter of Joan WW. v Peter WW., 173 AD3d 1380, 1381 [2019]). Family Court sustained claims based upon harassment in the second degree and stalking in the fourth degree (see Penal Law §§ 120.45 [1]; 240.26 [3]). "The requisite intent for both such offenses may be inferred from the conduct itself or the surrounding circumstances" (Matter of Lynn TT. v Joseph O., 129 AD3d 1129, 1130 [2015] [citations omitted]; see Matter of Erica II. v Jorge JJ., 165 AD3d 1390, 1391 [2018]).
The mother's testimony reveals that the father, among other [*5]things, drove near her home and up to her driveway without her consent, either sat in his car or stood and looked over her backyard from an overpass road, engaged in conduct that could cause her to lose her employment, took certain tools necessary for chopping wood and filled her gas cans with soapy water. Family Court concluded, based on testimony of the mother and a state trooper, that the father broke a window in her house late at night when she was inside with her boyfriend. In response to these alleged incidents, the mother reported feeling unsafe or fearful. Accepting Family Court's credibility determinations, which found the mother credible on these topics and disbelieved the father's denials regarding such conduct, the mother proved by a preponderance of the evidence the underlying family offenses (see Matter of Allen v Emery, 187 AD3d at 1341-1342; Matter of Lynn TT. v Joseph O., 129 AD3d at 1131). Thus, the court did not err in granting the mother a stay-away order of protection (see Family Ct Act §§ 841 [d], 842).
We have reviewed the father's remaining contentions and conclude that none warrants reversal or modification.
Lynch, Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by vacating the requirement that petitioner enroll in a parenting program as a prerequisite for a future application to modify the parenting time; petitioner is required to comply with that term as a component of supervised visitation; and, as so modified, affirmed.