Matter of Linda UU. v Dana VV. (2023 NY Slip Op 00013)

Matter of Linda UU. v Dana VV.

2023 NY Slip Op 00013

Decided on January 5, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 5, 2023

534234
[*1]In the Matter of Linda UU., Appellant,
v
Dana VV., Respondent. (Proceeding No. 1.)
In the Matter of Dana VV., Respondent.
v
Linda UU., Appellant. (Proceeding No. 2.) (And Six Other Related Proceedings.)

Calendar Date:November 17, 2022

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Ceresia and McShan, JJ. 

Sandra M. Colatosti, Albany, for appellant.
Alexandra J. Buckley, Clifton Park, for respondent.
Christopher J. Obstarczyk, Latham, attorney for the child.

Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Schenectady County (Kevin A. Burke, J.), entered September 8, 2021, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Linda UU. (hereinafter the grandmother) is the maternal grandmother of the child (born in 2017) and Dana VV. (hereinafter the mother) is the child's mother. Upon the parties' stipulation, Family Court issued an order in 2018 that awarded the parties joint legal custody of the child and primary residential custody to the grandmother. In 2019, an order entered upon the parties' stipulation continued joint legal custody and awarded the parties shared residential custody of the child. In November 2019, the grandmother filed an enforcement petition. Shortly thereafter, the mother filed a modification petition seeking sole legal and residential custody of the child. In 2020, the grandmother filed the following petitions: one to enforce the custody order, one alleging a family offense, two alleging violations of prior court orders and one seeking a modification of custody to grant her sole legal and residential custody of the child. In 2021, the grandmother filed another enforcement petition.
Following a fact-finding hearing on all petitions, Family Court found that the grandmother failed to establish the existence of extraordinary circumstances to supplant the mother's right to custody of the child, and thus ordered the mother to have sole legal and residential custody of the child and awarded the grandmother visitation every other weekend. Family Court further determined that the grandmother failed to establish a family offense and failed to establish a willful violation of the order of protection or the custody order. The grandmother appeals.
Initially, while this appeal was pending, Family Court issued a custody order in May 2022. We take judicial notice of the order; however, we disagree with the mother that the 2022 order renders the grandmother's appeal moot. The 2022 order continued sole legal and residential custody of the child with the mother and modified the grandmother's visitation. The May 2022 order did not indicate that the 2021 order was being superseded, vacated or that it relinquished the grandmother's right to pursue a custody appeal. Accordingly, the grandmother's appeal is not moot (see Matter of Nicole B. v Franklin A., 185 AD3d 1166, 1166 [3d Dept 2020]; Matter of Daniel C. v Joanne C., 182 AD3d 711, 712 [3d Dept 2020]; Matter of Christopher Y. v Sheila Z., 173 AD3d 1396, 1397 [3d Dept 2019]).
"A parent has a claim of custody of his or her child that is superior to that of all others, absent surrender, abandonment, persistent neglect, unfitness, disruption of custody over a prolonged period of time or the existence of other extraordinary circumstances" (Matter of Karen Q. v Christina R., 170 AD3d 1446, 1447 [3d Dept 2019] [internal quotation marks, brackets and [*2]citations omitted]). A grandparent may make the requisite showing of extraordinary circumstances by establishing that there has been an extended disruption of custody (see Matter of Rumpff v Schorpp, 133 AD3d 1109, 1110 [3d Dept 2015]) or persistent neglect. "[A]n extended disruption of custody includes, but is not limited to, a prolonged separation of the . . . parent and the child for at least 24 continuous months during which the parent voluntarily relinquished care and control of the child and the child resided in the household of the petitioner grandparent" (Matter of Donna SS. v Amy TT., 149 AD3d 1211, 1213 [3d Dept 2017] [internal quotation marks, brackets and citations omitted]). Persistent neglect, sufficient to rise to the level of extraordinary circumstances, requires a showing "that the parent has failed either to maintain substantial, repeated and continuous contact with a child or to plan for the child's future" (Matter of Arlene Y. v Warren County Dept. of Social Servs., 76 AD3d 720, 721 [3d Dept 2010] [internal quotation marks and citations omitted], lv denied 15 NY3d 713 [2010]). "The burden of showing that such extraordinary circumstances exist rests with the nonparent challenging the parent's custody, and it is only when this threshold demonstration has been achieved that a court may then turn to the question of what custodial arrangement is in the best interests of the child" (Matter of Battisti v Battisti, 121 AD3d 1196, 1197 [3d Dept 2014] [internal citations omitted]; see Matter of Tamika B. v Pamela C., 187 AD3d 1332, 1335 [3d Dept 2020]). Here, Family Court found that the grandmother did not meet her burden of proving that there had been an extended disruption of custody, continuing abuse of substances by the mother, persistent neglect or abuse of the child.
"In assessing whether the parent voluntarily relinquished care and control of the child and whether the child actually resided with the grandparent for the required prolonged period of time, courts must consider the totality of the circumstances, taking into account such factors as the quality and quantity of contact between the parent and child, the amount of time that the child has lived with the grandparent, the quality of the relationship between the child and the grandparent and the length of time that the parent allowed the separation to continue before attempting to assume the primary parental role" (Matter of Donna SS. v Amy TT., 149 AD3d at 1213 [internal quotation marks and citations omitted]). Although the child has primarily resided with the grandmother, the mother has maintained a continuous presence in the child's life, sought residential custody of the child within a year of the 2018 order and since the 2019 order has had shared residential custody of the child. Moreover, the mother retained and exercised control of important decision-making matters involving the child, including the child's medical care, enrollment in Head Start and communication with [*3]Head Start staff (see Matter of Amber B. v Scott C., 207 AD3d 847, 848-849 [3d Dept 2022]; Matter of Elizabeth SS. v Gracealee SS., 135 AD3d 995, 997 [3d Dept 2016]). As such, we agree with Family Court that there was no extended disruption of custody.
As to the mother's fitness as a parent, the record confirms that her behaviors in the aggregate do not rise to the level of extraordinary circumstances. Although the record shows that the mother had multiple residences and employers, these circumstances do not rise to the level of persistent neglect or unfitness. The record evinces that the mother endeavored to establish a stable environment for herself and her child and that the child has been adequately cared for by the mother (see Matter of Hawkins v O'Dell, 166 AD3d 1438, 1440-1441 [3d Dept 2018]; Matter of Thompson v Bray, 148 AD3d 1364, 1366 [3d Dept 2017]). Deferring to Family Court's factual findings and credibility determinations, we find that there is a sound and substantial basis in the record supporting the court's determination that extraordinary circumstances did not exist (see Matter of Amber B. v Scott C., 207 AD3d at 849; Matter of Hawkins v O'Dell, 166 AD3d at 1441).[FN1] In the absence of a finding of extraordinary circumstances, an inquiry relative to the child's best interests is not allowed (see Matter of Amber B. v Scott C., 207 AD3d at 849; Matter of Battisti v Battisti, 121 AD3d at 1197).
The grandmother next contends that Family Court erred in determining that she failed to establish a family offense. We disagree. "[C]ritical to a charge of disorderly conduct is a finding that [the mother's] disruptive statements and behavior were of a public rather than an individual dimension . . ., which requires proof of an intent to threaten public safety, peace or order" (People v Baker, 20 NY3d 354, 359 [2013]). "[A] person may be guilty of disorderly conduct only when the situation extends beyond the exchange between the individual disputants to a point where it becomes a potential or immediate public problem" (id. at 359-360 [internal quotation marks and citation omitted]). The record demonstrates that the mother had left the Head Start building, moved away from the line of parents picking up their children, and engaged in cursing at the grandmother in front of the grandmother's vehicle, which was parked on the road. There was no proof as to the number of people in the vicinity or that any were drawn to the situation, thus there is insufficient proof of an intent to threaten public safety, peace or order or the reckless creation of such a risk.[FN2] Instead, the encounter was of a personal nature — an altercation between mother and daughter. "Whether a family offense has been committed is a factual issue to be resolved by Family Court, and its determinations regarding the credibility of witnesses are entitled to great weight on appeal. Giving due deference to the court's credibility determinations, we find no error in the dismissal of [*4]the petition" (Matter of Evelyn EE. v Lorraine B., 152 AD3d 915, 918 [3d Dept 2017] [internal quotation marks, brackets and citations omitted], lv denied 30 NY3d 903 [2017]; see Matter of Nicole J. v Joshua J., 206 AD3d 1186, 1189-90 [3d Dept 2022]; Matter of Smith v Morrison, 196 AD3d 772, 774 [3d Dept 2021]; Matter of Sharon D. v Dara K., 130 AD3d 1179, 1181 [3d Dept 2015]).
We similarly find no basis upon which to disturb Family Court's determination that the grandmother failed to establish a willful violation of the prior custody order.[FN3] "The proponent of a violation petition must establish, by clear and convincing evidence, that there was a lawful court order in effect with a clear and unequivocal mandate, that the person who allegedly violated the order had actual knowledge of the order's terms, that the alleged violator's actions or failure to act defeated, impaired, impeded or prejudiced a right of the proponent and that the alleged violation was willful" (Matter of Timothy RR. v Peggy SS., 206 AD3d 1123, 1124 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Aaron K. v Laurie K., 187 AD3d 1423, 1424 [3d Dept 2020]). "Whether violations were willful distills to a credibility determination, upon which we generally defer to Family Court. We will not disturb Family Court's determination on a violation petition absent an abuse of discretion" (Matter of Tamika B. v Pamela C., 187 AD3d at 1338 [internal quotation marks and citations omitted]; see Matter of Damon B. v Amanda C., 202 AD3d 1333, 1334 [3d Dept 2022]; Matter of Carl KK. v Michelle JJ., 175 AD3d 1627, 1628 [3d Dept 2019]).
The grandmother alleged that the mother violated the terms of the custody order in that the mother provided neither transportation nor transportation costs for the child's parenting time with the grandmother, nor did she provide the names of her daycare providers to the grandmother, as directed by the order. However, Family Court determined that the grandmother's testimony was limited to general statements, and that she failed to provide any evidence as to when or how the mother failed to provide reimbursement for transportation expenses, and the record again supports Family Court's determination. Moreover, there was no testimony concerning the mother's failure to provide the names of her daycare providers. Thus, according due deference to Family Court's credibility determinations, we do not find that Family Court abused its discretion in concluding that the grandmother did not establish a willful violation of the order (see Matter of Tamika B. v Pamela C., 187 AD3d at 1338; Matter of Jemar H. v Nevada I., 182 AD3d 805, 808 [3d Dept 2020]).
Garry, P.J., Ceresia and McShan, JJ., concur.
Lynch, J. (concurring in part and dissenting in part).
I agree with the majority's determination, except with respect to the family offense petition. That petition stemmed from an encounter between the parties during the afternoon of September 24[*5], 2020, when Linda UU. (hereinafter the grandmother) was scheduled by court order to pick the child up from the Head Start program, which the child started earlier in the week. Given the ongoing pandemic, an employee at the program testified that the protocol for pick-up required the families to line up outside, six feet apart, with one person at a time allowed to enter the building and sign their child out. As recounted in the employee's testimony, she observed the grandmother in line, with Dana VV. (hereinafter the mother) standing behind her. The grandmother was allowed inside, retrieved the child and returned to her car, about 10 feet away from where the employee was standing.
In the meantime, the mother engaged the employee in a discussion, contending that she was entitled to pick the child up that day. After the employee explained that they were following the court order, she described the mother as "pretty upset and [the mother] said she was going to call the cops." At that point, the mother walked toward the grandmother's car. The child was in the car, with the grandmother standing by the door and, according to the employee, she "kind of put her arm by the door to stop [the mother] from getting in the car." The mother "pushed her arm out of the way," opened the door and interacted with the child. The mother "then slammed the door really hard," with the grandmother stating "you could've cut his arm off." At that point, the mother opened the door, interacted with the child and "slammed the door again." As she did so, she "was swearing at [the grandmother] and screaming that [the child] was not her kid and [the grandmother] wasn't going to take him." The mother then proceeded "across the street . . . still yelling and swearing." The employee further testified that the grandmother was not "cursing" during this encounter, and she observed other adults and children react to the "swearing and yelling."
For her part, the grandmother explained that the mother pushed past her at the car, causing her arm to hit the door, and "cursed [her] out . . . and all the people there were looking at [the mother]." When asked whether there had been an altercation, the mother testified "[n]o, not at all."
As the majority correctly explains, a critical element of disorderly conduct is a finding that the offending party's "disruptive statements and behavior were of a public rather than an individual dimension" (People v Baker, 20 NY3d 354, 359 [2013]). The mens rea component for this charge "requires proof of an intent to threaten public safety, peace or order (or the reckless creation of such a risk)" (id.). In effect, disorderly conduct occurs "'when the situation extends beyond the exchange between the individual disputants to a point where it becomes a potential or immediate public problem'" (id. at 359-360, quoting People v Weaver, 16 NY3d 123, 128 [2011]).
In dismissing this petition, it is my view that Family Court failed to take due account of all the [*6]attendant circumstances, as recounted above. Such disruptive behavior outside a daycare program in the direct presence of other adults and children took on a public dimension that was no doubt alarming to the grandmother, the child and the bystanders. Whether intentional or not, such conduct satisfies the reckless component for the charge. On this record, the charge of disorderly conduct within the petition was established by a preponderance of the evidence and should have been sustained (see Penal Law § 240.20 [1], [3]; Matter of Bedford v Seeley, 176 AD3d 1338, 1339 [3d Dept 2019]; Matter of Susan WW. v Alan WW., 161 AD3d 1249, 1251 [3d Dept 2018]).
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Although the position of the attorney for the child is not determinative, it is a factor to be considered and here, the child's appellate attorney contends that the grandmother did not establish extraordinary circumstances (see Matter of Brandon E. v Kim E., 167 AD3d 1293, 1295 [3d Dept 2018]).

Footnote 2: Although a Head Start employee stated that she initially followed the mother out of the building, she testified that she was approximately 10 feet from the grandmother's vehicle and was not involved in the altercation.

Footnote 3: The grandmother concedes that she failed to establish a willful violation of the order of protection and court order (the October 2020 violation petitions), the temporary custody/parenting time order (the May 2021 enforcement petition), and the March 2020 enforcement petition.