Matter of Giuseppe V. v Tiffany U. (2024 NY Slip Op 00956)

Matter of Giuseppe V. v Tiffany U.

2024 NY Slip Op 00956

Decided on February 22, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 22, 2024

CV-22-2183
[*1]In the Matter of Giuseppe V., Respondent,
v
Tiffany U., Appellant. (Proceeding No. 1.)
In the Matter of Tiffany U., Appellant,
v
Giuseppe ., Respondent. (Proceeding No. 2.) (And Another Related Proceeding.)

Calendar Date:January 10, 2024

Before:Clark, J.P., Lynch, Reynolds Fitzgerald, McShan and Powers, JJ.

Ivy M. Schildkraut, Rock Hill, for appellant.
Law Office of Martin S. Butcher, PC, Washingtonville (Martin S. Butcher of counsel), for respondent.
Marcia Heller, Rock Hill, attorney for the child.

Lynch, J.
Appeal from an amended order of the Family Court of Sullivan County (Mark M. Meddaugh, J.), entered September 21, 2022, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Giuseppe V. (hereinafter the father) and Tiffany U. (hereinafter the mother) are the parents of the subject child (born in 2013). A November 2017 consent order awarded the parties joint legal custody, with primary physical custody to the mother and parenting time to the father. The mother was to have final decision-making authority over "all major non-emergency matters affecting the welfare of the child, with meaningful input from the father." On March 9, 2021, the mother filed a petition alleging that the father violated the November 2017 order by, among other things, illegally taking the child from her residence several months prior and failing to let her speak with the child since then.[FN1] She filed another petition a week later seeking enforcement of the November 2017 order. The father, in turn, filed a modification petition seeking sole legal and primary physical custody of the child, implicitly denying the mother's allegation that he had illegally taken the child and explaining that the child was in his care due to an incident in early September 2020 when the child was left home in Connecticut without adult supervision — an incident under investigation by the relevant child protective services agency in Connecticut.[FN2] Following fact-finding and Lincoln hearings, Family Court awarded the father sole legal and primary physical custody of the child, with a schedule of parenting time for the mother. The court dismissed the mother's violation petition, finding that she did not prove her contentions by clear and convincing evidence. The mother appeals, challenging the award of sole legal and primary physical custody to the father.[FN3]
The mother does not challenge the dismissal of her violation petition and concedes that a change in circumstances has occurred since entry of the November 2017 order. Thus, the issue "distills to whether the award of sole custody to the father is in the child's best interests, an inquiry that requires examination of such relevant facts as the home environment of each parent, the relative fitness of the parents, the parents' past performance and ability to provide for the child's overall well-being, how faithful each party has been to prior court orders, the child's wishes and the willingness of each parent to foster a positive relationship between the child and the other parent" (Matter of Brent O. v Lisa P., 161 AD3d 1242, 1243 [3d Dept 2018] [internal quotation marks, brackets and citations omitted]; see Matter of David V. v Roseline W., 217 AD3d 1112, 1113 [3d Dept 2023], lv denied 40 NY3d 905 [2023])."Given the superior position of Family Court to observe and evaluate the witnesses' testimony, its factual findings and credibility assessments are to [*2]be accorded great deference, and we will not disturb its custodial determination if supported by a sound and substantial basis in the record" (Matter of Brent O. v Lisa P., 161 AD3d at 1243; see Matter of David V. v Roseline W., 217 AD3d at 1113; Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1167 [3d Dept 2020]).
Although the mother had been the primary custodian of the child since her birth, several incidents occurred following the November 2017 order calling her parenting judgment into question. In that respect, the father recounted finding a "story book" in the child's possessions during his parenting time which depicted a sexually explicit story about the child and her friend. The mother testified that she adequately addressed the issue by speaking with the friend's mother about the situation, but a text message exchange between the parties demonstrates that she laughed at the father when he expressed his concerns in this regard. The father also recalled an incident in September 2020 when the child called him from the mother's residence in Connecticut advising that she was alone and hungry. The father called the mother, who stated that she was home, but he drove to her residence to investigate. When he arrived, the child was hysterically crying and informed him that she had been choked by the mother's 12-year-old son (hereinafter the older half brother). The father did not find the mother at home. After filing a police report, the father took the child back to his residence and tried to get in touch with the mother, to no avail.
The father described another incident that occurred a few days later when the child was at his house. He maintained that the mother called the child and told her to go outside. The child obliged and started riding her bike in front of the house. A car carrying the mother, the maternal grandmother, the older half brother and the maternal aunt then pulled up outside and, according to the father, the mother attempted to "snatch" the child. The father testified that he tried to intervene, but the older half brother swung a bat at him and he was pepper sprayed by the maternal grandmother. After the father called the police, the Sullivan County Department of Family Services/Child Protection Unit got involved and a safety plan was put in place on September 8, 2020 pursuant to which the mother agreed to allow the child to reside with the father during the ensuing investigation.[FN4] When the mother did not see the child for six months following issuance of the safety plan, she filed her violation petition in March 2021. The father admitted during the ensuing fact-finding hearing that the mother did not see the child during this period, but emphasized that the safety plan did not provide for her to have parenting time. He acknowledged that the mother had only a few phone calls with the child during this period, but the record makes clear that additional contact was occurring between them through therapy sessions.
Following a [*3]virtual court appearance on June 29, 2021, Family Court transferred custody back to the mother in Connecticut, emphasizing that no abuse or neglect petitions had been filed against her with respect to the September 2020 incident and the safety plan was no longer operative. However, in December 2021, the father was contacted by the Connecticut Department of Children and Family Services after the child reported being hit by the mother. The child was returned to the father's custody at that time and a temporary order was issued in Sullivan County in February 2022 granting the mother visitation at a mall. The father testified that the mother did not consistently visit with the child pursuant to this temporary order, estimating that she saw the child six or seven times at this location and only sporadically reached out for telephone calls. He further noted that he had made efforts to facilitate visitation during this period by driving the child to the mother's home in Connecticut on a couple of occasions. After the child returned to the father's care in December 2021, she informed him that, while she was living with the mother, the older half brother hit her, she was left alone "pretty often," and she was primarily responsible for feeding the mother's three-year twin sons (hereinafter the younger half brothers). There was also evidence that, after the child came to live with the father in December 2021, an unfounded Child Protective Services report was filed against him.
As for the parties' ability to provide a stable home environment for the child, at the time of the fact-finding hearing, the mother — who was employed as a licensed practical nurse working with private clients — was living in an Air B & B in Connecticut with the older and younger half brothers, explaining that her former landlord was selling her residence and that she intended to move to Dorchester, Massachusetts — a 4½ hour drive from the father's residence — to obtain better school services for one of the younger half siblings, who has special needs. There was also evidence that while the mother was the primary custodian, she provided inadequate dental care for the child and failed to keep the father informed about whether the child had a pediatrician. The father, by contrast, indicated his understanding about the importance of maintaining the child's relationship with the mother, had obtained a pediatrician for the child and had facilitated necessary dental work for her. He was also employed in a job that enabled him to be home for the child during the day, with his girlfriend available for the child at night. At the time of the fact-finding hearing, the child was being homeschooled by the father because she had not obtained any of the vaccinations necessary to attend public school. The father explained that the mother, who had final decision-making authority under the 2017 order, had made this decision and that he intended to have the child immunized so she could attend public school [*4]in New York if awarded sole legal custody.
In these circumstances, Family Court's best interest determination is supported by a sound and substantial basis in the record. Although the mother denied several of the father's allegations regarding the incidents in September 2020 and December 2021, and was adamant that she had never seen the older half brother be physically aggressive with the child, Family Court implicitly credited the father's testimony in this regard and there is no basis to disturb its factual findings (see Matter of Derek JJ. v Jennifer KK., 196 AD3d 765, 767 [3d Dept 2021]). Given the mother's exhibited poor judgment, involvement with Child Protective Services, and failure to take seriously the claims that the older half brother was being abusive, we agree with Family Court that awarding the father primary physical custody is in the child's best interests (see Matter of Satema C. v Stephen D., 221 AD3d 1304, 1307 [3d Dept 2023]; Matter of David V. v Roseline W., 217 AD3d at 1114). The award of sole legal custody to the father also has a sound and substantial basis in the record, which, contrary to the mother's contention, demonstrates that the parties have been unable to effectively coparent and that the father is better equipped to make sound decisions regarding important issues (see Matter of Joshua XX. v Stefania YY., 218 AD3d 893, 896 [3d Dept 2023]; Matter of Cooper v Williams, 161 AD3d 1235, 1237 [3d Dept 2018]).
Clark, J.P., Reynolds Fitzgerald, McShan and Powers, JJ., concur.
ORDERED that the amended order is affirmed, without costs.

Footnotes

Footnote 1: This petition was filed in Dutchess County but was transferred to Sullivan County.

Footnote 2: A temporary order was issued in February 2022 placing the child in the custody of the father pending resolution of the petitions.

Footnote 3: Although not dispositive, we note that the attorney for the child supports the custody award in the father's favor.

Footnote 4: The record demonstrates that the mother completed a parenting class and enrolled in counseling.