Matter of Cullen NN. v Patrice OO.
2026 NY Slip Op 02900
May 7, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Cullen NN., Respondent,
v
Patrice OO., Appellant. (And Another Related Proceeding.)

Decided and Entered:May 7, 2026
CV-24-1711
Calendar Date: March 23, 2026
Before: Clark, J.P., Ceresia, Fisher, Powers And Corcoran, JJ.

Constantina Hart, Kauneonga Lake, for appellant.
Cullen NN., Boston, Massachusetts, respondent pro se.
William Phipps Pape, Cottekill, attorney for the child.

[*1]
Ceresia, J.
Appeal from an order of the Family Court of Ulster County (Keri Savona, J.), entered September 9, 2024, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the subject child (born in 2011). Pursuant to a 2017 custody order entered on consent, the parents agreed to share joint legal custody of the child, with primary physical custody to the mother and parenting time for the father. In 2024, the father, who lives in Boston, Massachusetts, filed two modification petitions seeking primary physical custody, necessitating relocation of the child, based upon allegations of a breakdown in the relationship between the mother and the child. Following a fact-finding hearing, Family Court awarded primary physical custody to the father, with the mother to receive parenting time. The mother appeals.
"A party seeking to modify a prior order of custody must show that there has been a change in circumstances since the prior order and, then, if such a change occurred, that the best interests of the child would be served by a modification of that order" (Matter of Ashley UU. v Ned VV., 235 AD3d 1200, 1201 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Christine EE. v David FF., 235 AD3d 1156, 1157 [3d Dept 2025]). In undertaking a best interests analysis, "Family Court must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Sherab X. v Michelle Y., 244 AD3d 1532, 1533 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Michelle EE. v John EE., 235 AD3d 1121, 1123 [3d Dept 2025]). "Where, as here, the practical effect of granting a request for modification of custody would be relocation of the child[ ], relocation must be considered within that framework" (Matter of Alicia SS. v Andrew RR., 224 AD3d 1207, 1209 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; see Matter of Jesse FF. v Amber GG., 222 AD3d 1254, 1256 [3d Dept 2023]). "This Court accords great deference to Family Court's factual findings and credibility determinations and will not disturb its custodial determination if supported by a sound and substantial basis in the record" (Matter of Kyle I. v Kandice K., 232 AD3d 1074, 1076 [3d Dept 2024] [internal quotation marks, ellipsis and citations omitted]; see Matter of Matthew L. v Sierra N., 229 AD3d 866, 868 [3d Dept 2024], lv denied 42 NY3d 907 [2024]).
Turning first to whether there was a change in circumstances, the hearing evidence established [*2]that the relationship between the mother and the child had deteriorated to the point where they were acting violently toward each other, with the police or Child Protective Services having been involved on multiple occasions. The mother testified that the child who, although only 13 years old, was six feet tall and a "grown man" in her estimation had become unmanageable at times, to the point where she was forced to seek help from relatives and neighbors. In addition, the mother had attempted to arrange anger management therapy for the child but he refused to attend, and he was also skipping school. The foregoing evidence of domestic violence involving the child, together with the growing difficulty experienced by the mother in managing him, was sufficient to demonstrate a change in circumstances (see Matter of William EE. v Christy FF., 151 AD3d 1196, 1198 [3d Dept 2017]; Matter of Passero v Giordano, 53 AD3d 802, 803 [3d Dept 2008]; Matter of Colwell v Parks, 44 AD3d 1134, 1136 [3d Dept 2007]).
As for the question of what custodial arrangement would be in the child's best interests, it was the father's testimony that the mother's home was in some disrepair and lacked both Internet and cellphone service, and the child had to share a bedroom with the mother because the remaining bedroom was not winterized. The father was troubled by the child's absences from school and the negative interactions between the mother and the child, including incidents where the mother kicked the child out of her home and vehicle, and told the father she was at her "wit's end" with him. Another concern expressed by the father was the child's use of marihuana, which he had apparently found in the mother's vehicle. The father indicated that his communication with the child was impeded by the mother, who would interject during their telephone calls, and he was concerned that the mother was withholding important information about the child from him and causing the child to mistrust him. Regarding the father's home environment, the child had his own bedroom and the father had secured a placement for the child with free tuition at the private school where he worked as a teacher and coach. The father testified that when the child was in his care, he freely shared information about the child with the mother and did not restrict the child's communication with her in any way. According to the testimony of the father and the paternal grandmother, the child had recently enjoyed a summer in which he bonded with the father and other relatives, traveled with them and held a job as a counselor in training at a summer camp. Family Court found the father and paternal grandmother to be credible witnesses.
For her part, the mother emphasized that the child had always lived with her and that the conflict between them had recently been improving. She contended that the child did well in school, played basketball twice a week and met regularly with a school counselor. The mother testified [*3]that she did not impede the father's communication with the child and, although she shared certain information with the father, she held back other things for fear of the father calling the police or Child Protective Services on her unnecessarily, as he had in the past. The mother also claimed that the father frequently failed to exercise his visitation. She admitted that she shared a bedroom with the child and that he had found marihuana in her vehicle, although she was opposed to him using it. The mother also admitted to reprimanding the child physically and to enlisting a male neighbor, whose last name she did not know, to help with the child, including providing overnight respite care. Family Court found the mother's testimony to be "evasive, non-responsive, and contradictory," noting that she avoided answering questions in a way that would appear unfavorable to her.
Notwithstanding the fact that a change in custody would require the child to relocate to Boston, away from the home where he had primarily grown up, Family Court concluded that this change was in the child's best interests. In the court's view, the mother's inability or unwillingness to address the child's behavioral problems, and her view that the physical altercations between her and the child were part of normal adolescent behavior, reflected a risk that the child would continue on a "dangerous path" of "concerning, out of control behavior" in the mother's custody. By contrast, the court found that the father offered a more structured, supportive environment where the child's behavior improved, and the father was the more likely parent to foster a positive relationship between the noncustodial parent and the child. Deferring to the court's credibility assessments, we find that its determination is supported by a sound and substantial basis in the record (see Matter of Jennifer HH. v Alavanh II., 243 AD3d 1170, 1173 [3d Dept 2025]; Matter of Janaye D. v Zachary C., 240 AD3d 961, 963-964 [3d Dept 2025], lv denied 44 NY3d 910 [2026]; Matter of Alicia SS. v Andrew RR., 224 AD3d at 1211; Matter of Tavernia v Bouvia, 12 AD3d 960, 962 [3d Dept 2004]).FN1
With regard to the mother's claim that Family Court should have held a Lincoln hearing, "although a Lincoln hearing indeed is the preferred method for ascertaining the child[ ]'s wishes, such a hearing is not mandatory" (Matter of Derek KK. v Jennifer KK., 196 AD3d 765, 768 [3d Dept 2021] [internal quotation marks and citation omitted]). Rather, "[t]he determination of whether to hold a Lincoln hearing lies within Family Court's discretion and such a hearing will not be conducted if it will have a potential negative impact on the child" (Matter of Mary Ellen H. v Joseph H., 193 AD3d 1275, 1276-1277 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Derek KK. v Jennifer KK., 196 AD3d at 768). Here, the attorney for the child spoke to the child and then reported to the court that it was the child's preference [*4]not to testify. The attorney for the child indicated to the court that the child loved both of his parents and did not want to have to choose between them but, if forced to, he would prefer to continue living with the mother. Under these particular circumstances, although it is typically best practice to hold a Lincoln hearing with a child of this age, we are satisfied that the court did not commit error in declining to do so (see Matter of Mary Ellen H. v Joseph H., 193 AD3d at 1277; Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1168 [3d Dept 2020]; Matter of Brandon E. v Kim E., 167 AD3d 1293, 1295 [3d Dept 2018]; compare Matter of Samantha WW. v Malek XX., 217 AD3d 1081, 1083 [3d Dept 2023]).
Clark, J.P., Fisher, Powers and Corcoran, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1
We have considered the position of the attorney for the child which we note is not determinative (see Matter of Linda UU. v Dana VV., 212 AD3d 906, 909 n 1 [3d Dept 2023], lvs denied 39 NY3d 913 [2023], 39 NY3d 913 [2023]) that Family Court properly found a change in circumstances but erred in awarding primary physical custody to the father.